UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10742-GAO

UNLEASHED DOGGIE DAY CARE, LLC,
Plaintiff,

v.

PETCO ANIMAL SUPPLIES STORES, INC.,
Defendant.

OPINION AND ORDER
December 16, 2010

O'TOOLE, D.J.

This is an action for trademark infringement. The plaintiff, Unleashed Doggie Day Care, LLC ("UDDC"), has moved for a preliminary injunction to preclude the defendant, PetCo Animal Supplies Stores, Inc. ("PetCo"), from using the mark "Unleashed."

## I. Background

The following facts are taken from the parties' submissions:

### A. UDDC

UDDC is owned and operated by Oliver Blumgart. Blumgart originally operated a dog-walking company named "Beverly Petsitters." After his business grew substantially, Blumgart opened a daycare facility for dogs, where they could play and exercise off the leash. Blumgart opened "Unleashed" as a sole proprietorship at 8 Trask Street in Beverly, Massachusetts in July 2002. Three years later, he converted the sole proprietorship to a limited liability company, "Unleashed Doggie Day Care, LLC." According to Blumgart, UDDC currently serves 1500 dog owners in Massachusetts, Rhode Island, and New Hampshire.

Blumgart also operates a dog grooming facility that sells dog food, treats, and accessories. Originally called "A Cut Above the Rest," Blumgart changed the facility's name to

"Unleashed—The Shop" in 2002. "Unleashed—The Shop" has moved several times, but is currently located at 12 Lothrop Street, Beverly, Massachusetts.

UDDC engages in limited advertising because most of its business is generated by word of mouth recommendations. UDDC maintains a website and Facebook fan pages. UDDC has printed two brochures: one to announce the name change to "Unleashed—The Shop" and one when "Unleashed Doggie Day Care" opened. UDDC also mailed 25,000 postcards to dog owners in surrounding communities when "Unleashed—The Shop" changed locations. UDDC received an Honorable Mention in the 2006 Community Newspaper Company's Readers Choice Awards. UDDC's advertisements frequently feature "Unleashed" with a paw print. "Unleashed" sometimes appears in script lettering, but sometimes appears in uppercase lettering. Sometimes the lettering is black, but sometimes the lettering is white.

Blumgart applied to register the mark "Unleashed" with the U.S. Patent and Trademark Office ("USPTO") in June 2003. The USPTO initially determined that there was a likelihood of confusion with a pet daycare center called "Unleash Yourself" in Portland, Oregon. Blumgart overcame this determination, however, and his application was published for comment. In April 2005, Christi Blaskoski d/b/a "Unleashed, Behavior and Training Services" in Shakopee, Minnesota, filed an opposition to Blumgart's application. Blumgart abandoned his application soon thereafter.

B.   PetCo

PetCo operates large-scale retail pet supply stores nationwide. In 2008, PetCo created a new concept store called "Unleashed by PetCo," designed to bring PetCo's best selling retail products to more convenient, hometown locations. PetCo opened seven "Unleashed by PetCo" stores in Massachusetts. One opened in Beverly, Massachusetts on May 15, 2010. "Unleashed by PetCo" sells pet supplies, but does not offer pet sitting or pet grooming in Massachusetts.

PetCo's advertising campaign for "Unleashed by PetCo," developed by its marketing department, includes regional radio advertisements, print advertisements, internet banner advertisements, and mass-transit billboards. PetCo also operates a website, a Facebook fan page, and a Twitter page for "Unleashed by Petco." PetCo distributes promotional materials, including coupon flyers, door hangers, and tennis balls to members of the community. The marketing department develops new advertising methods each month.

PetCo has strict logo guidelines to maintain a consistent corporate identity. Each advertisement depicts the word "Unleashed" underlined by a collar and leash bearing the words "by PetCo." Generally, the mark appears in a brown rectangle with "Unleashed by PetCo" in white lettering, the leash in orange, and the collar in light green.

PetCo conducted a full trademark search before applying to register the mark "Unleashed by PetCo" with the USPTO. This search revealed that Blumgart had abandoned his application for the mark "Unleashed." PetCo also learned that 132 companies in the pet care products and services market used "Unleashed" in their names. Ultimately, PetCo settled on Unleashed by PetCo because it thought the mark was sufficiently distinguished from other marks in this market. The USPTO agreed. PetCo successfully registered its mark with the USPTO.

## II.  Preliminary Injunction Standard

To obtain a preliminary injunction under Federal Rule of Civil Procedure 65, UDDC must demonstrate (1) "a substantial likelihood of success on the merits," (2) "a significant risk of irreparable harm if the injunction is withheld," (3) "a favorable balance of hardships," and (4) "a fit (or lack of friction) between the injunction and public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Likelihood of success on the merits is always the *sine qua non* of the preliminary injunction inquiry, Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006), but its importance is magnified in a trademark infringement

action because the other three factors depend largely on whether the plaintiff can prove infringement, Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006).

**III.     Likelihood of Success on the Merits**

UDDC's purported mark "Unleashed" is not a registered mark.[1] Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a cause of action for infringement of unregistered marks. That provision, in relevant part, provides:

> Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Id. To succeed on an infringement claim, UDDC "must demonstrate both that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion." Borinquen Biscuit Corp., 443 F.3d at 116. PetCo challenges both elements.[2]

　　A.     Is "Unleashed" Entitled to Trademark Protection?

"[T]o be eligible for trademark protection, a mark must qualify as distinctive." Id. Whether a mark is distinctive depends upon where the mark fits along a spectrum of categories: generic, descriptive, suggestive, arbitrary, and fanciful marks. Boston Duck Tours, LP v. Super

---

[1] PetCo argues that UDDC's mark is not "Unleashed," but rather the composite marks "Unleashed Doggie Day Care" and "Unleashed—The Store." The Court need not resolve this issue because even if the mark is "Unleashed," the position more favorable to UDDC, UDDC has not shown a substantial likelihood of success on the merits.

[2] PetCo also argues that UDDC does not have standing under section 43(a) because Blumgart, not the plaintiff LLC, owns the mark. Under First Circuit law, however, one need not own the mark to have standing under section 43(a); one need only suffer adverse consequences from a violation of section 43(a). Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 160 (1st Cir. 1977); see also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:21 (4th ed. 1996). Because UDDC uses the mark, it would suffer adverse consequences from a violation of section 43(a) and thus it has standing.

Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008). UDDC contends that "Unleashed" is suggestive, so that the mark is inherently distinctive, Borinquen Biscuit Corp., 443 F.3d at 116; whereas, PetCo contends that "Unleashed" is descriptive, so that the mark is "tentatively considered non-distinctive but can attain distinctive status upon an affirmative showing of secondary meaning," id..

Distinguishing suggestive from descriptive marks is more an art than a science. See Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F. Supp. 994, 1008 (D. Mass. 1988). "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods [or services]," but it is "descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods [or services]." Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995). UDDC contends that "Unleashed" conveys an idea of a dog free to play without limitation, but connecting it to products and services for dogs requires imagination. That argument ignores a cardinal principle of trademark law: "The distinctiveness of a mark cannot be determined in the abstract, but only by reference to the goods or services upon which the mark is used." See U.S. Search, LLC v. U.S. Search.com, Inc., 300 F.3d 517, 524 (4th Cir. 2002) (citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:64 (4th ed. 1996)). "Unleashed," when used by a company that provides day care for dogs, is descriptive. It immediately conveys a characteristic of the day care services—permitting dogs to run free of their leashes.[3]

Additional indicators of descriptiveness exist here. "Extensive use of a mark by third parties [indicates] that the mark is merely descriptive of a given class of products [or services]."

---

[3] The fact that "Unleashed" might be suggestive when applied to the sale of pet care products or the provision dog grooming services does not alter this conclusion. "[E]ven if a mark may be suggestive . . . as applied to some goods or services, that mark should be deemed descriptive if it is descriptive of any of the goods or services" offered by the plaintiff. See U.S. Search LLC, 300 F.3d at 525. "Unleashed" is descriptive of UDDC's day care services.

5

Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1118 (9th Cir. 2010); see Calamari Fisheries, Inc., 698 F. Supp. at 1008 ("In determining whether a particular word has a descriptive or suggestive significance as applied to a field of merchandise or service, it is proper to take notice of the extent to which it has been used in trademarks by others in the same field."). PetCo highlights the two companies, "Unleash Yourself" in Portland, Oregon and "Unleashed, Behavior and Training Services" in Shakopee, Minnesota, encountered by Blumgart in the proceedings before the USPTO. During its trademark search, PetCo also unearthed 132 companies in the pet care products and services market using "Unleashed" in their names.

Additionally, if the proponent of trademark status himself uses the mark as a descriptive term, this is strong evidence of descriptiveness. See 2 McCarthy on Trademarks and Unfair Competition § 11:69; see also Devcon Corp. v. Woodhill Chem. Sales Corp., 455 F.2d 830, 832 (1st Cir. 1972) (deeming the president's testimony that "he called his product '5 Minute' epoxy because 'we're trying to give the customer an idea that it sets up in about five minutes' time'" relevant when determining whether mark was descriptive). PetCo points to Blumgart's deposition, where he testified that "Unleashed" was meant to be "a description of what we were doing and what we felt described the services and products we offered." (Supplemental Decl. of Deborah Higashi Dodge in Supp. of Opp'n to Mot. for a Prelim. Inj. Ex. A, at 13:4-9.)

The Court therefore concludes that "Unleashed," when used by a company that provides day care for dogs, is descriptive.

### B. Has "Unleashed" Acquired Secondary Meaning?

Because its mark is descriptive, UDDC must prove distinctiveness by showing that "Unleashed" has acquired secondary meaning. Borinquen Biscuit Corp., 443 F.3d at 116. This requires proof that "'in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself.'" Id. (quoting Inwood Labs., Inc.

6

v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982)). Proof of secondary meaning "entails vigorous evidentiary requirements." Boston Beer Co. Ltd. v. Slesar Bros. Brewing Co., 9 F.3d 175, 181 (1st Cir. 1993).

"The only direct evidence probative of secondary meaning is customer surveys and testimony of individual consumers." Yankee Candle Co. v. Bridgewater Candle Co., Inc., 259 F.3d 25, 43 (1st Cir. 2001). UDDC has submitted the affidavits of two customers, William A. Scofield and Joanne S. Hall, in support of its claim that "Unleashed" has acquired secondary meaning. While proof that each and every member of the consuming public associates the mark with the plaintiff is not required, the plaintiff must prove that "a significant quantity of the consuming public understand a name as referring exclusively to the appropriate party." President & Trs. of Colby Coll. v. Colby Coll.—N.H., 508 F.2d 804, 807 (1st Cir. 1975). Two affidavits from a client pool of 1500 dog owners and a claimed target market consisting of every dog owner in Massachusetts, Rhode Island, and New Hampshire are clearly insufficient to establish that "a significant quantity of the consuming public" understand "Unleashed" to refer exclusively to UDDC.

Where direct evidence does not establish secondary meaning, UDDC may establish secondary meaning by resort to circumstantial evidence. Circumstantial evidence of secondary meaning includes: "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." Boston Beer Co., 9 F.3d at 182. UDDC highlights its use of "Unleashed" since 2002, its advertising efforts, including a brochure advertising "Unleashed—The Shop" printed in 2002, a brochure advertising UDDC also printed in 2002, a mailing of 25,000 postcards when

"Unleashed—The Shop" changed its address in 2005, and its receipt of an Honorable Mention in the 2006 Community Newspaper Company's Readers Choice Awards.

These advertising efforts do not suffice to establish secondary meaning. "While evidence of [a plaintiff's] advertising and promotional activities may be relevant in determining secondary meaning, the true test of secondary meaning is the effectiveness of this effort to create it." Yankee Candle Co., 259 F.3d at 44 (internal quotation omitted). UDDC concedes that its advertising has not created an association between its services and "Unleashed," but that the growth in its business is largely based on word of mouth recommendations from clients. Additionally, the record contains no evidence, such as circulation or method of distribution, indicating whether its brochures or the newspaper announcing its Honorable Mention reached enough members of the consuming public to create secondary meaning. See MJM Prods. v. Kelley Prods., Inc., No. 03-390, 2003 WL 22205129, at *8 (D.N.H. Sept. 24, 2003) (finding a mere list of stories about the plaintiffs' film insufficient to establish secondary meaning because the plaintiffs did not present "any information, such as circulation or audience statistics, which would enable the court to determine whether these stories reached enough consumers to create secondary meaning throughout the state").

Accordingly, the Court concludes that UDDC has not shown a substantial likelihood of demonstrating that "Unleashed" has acquired secondary meaning and, therefore, has not shown a substantial likelihood of proving that PetCo has violated section 43(a) of the Lanham Act.

C. Is Unleashed by PetCo Likely to Result in Consumer Confusion?

It is unnecessary to address the question of likelihood of confusion because UDDC's mark is not entitled to trademark protection. Nevertheless, the parties have addressed the question, and the Court concludes that Unleashed by PetCo is unlikely to result in consumer confusion.

The First Circuit in Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981), identified eight factors that must be considered when determining whether the allegedly infringing use will result in consumer confusion:

> the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark.

While these factors must be considered, see Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987), they are not exhaustive and no single factor is determinative, Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 15 (1st Cir. 2004).

### 1. *Similarity of the Marks*

The two marks at issue are similar in that both include the word "Unleashed." However, "'similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features.'" Pignons S.A. de Mecanique de Precision, 657 F.2d at 487 (quoting Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 444 (9th Cir. 1980)). The First Circuit has repeatedly emphasized: "Otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer." Id.; see also R.G. Barry Corp. v. A. Sandler Co., 406 F.2d 114, 116 (1st Cir. 1969) (use of housemark with contested trademark was of "exceptional significance"). PetCo uses "Unleashed" together with "by PetCo." Including "by PetCo," especially where PetCo is an immediately recognizable national brand, makes the two marks sufficiently dissimilar that consumer confusion is unlikely.

Similarity also takes into account the marks' sight, sound, and meaning. Boston Duck Tours, LP, 531 F.3d at 29; see also CCBN.com, Inc. v. c-call.com, Inc., 73 F. Supp. 2d 106, 112 (D. Mass. 1999) (considering the marks' font, design, and color scheme). PetCo has strict logo guidelines to maintain a consistent corporate identity. Its mark always depicts the word

"Unleashed" underlined by a collar and leash bearing the words "by PetCo." The mark appears in a brown rectangle with "Unleashed by PetCo" in white lettering, the leash in orange, and the collar in light green. In contrast, UDDC's logo varies from advertisement to advertisement. "Unleashed" is frequently (but not always) depicted with a paw print, sometimes black and sometimes white, in script or uppercase lettering, sometimes black and sometimes white. The dissimilarity of the marks indicates that consumer confusion is unlikely.

### 2. *Similarity of the Goods*

UDDC offers pet care services, including day care and grooming. UDDC concedes that Unleashed by PetCo currently does not provide similar services in Massachusetts, but emphasizes Unleashed by PetCo could provide such services in the future.[4] Hypothetical similarity of services does not establish a likelihood of confusion.

In addition to its day care and grooming services, however, UDDC sells pet care products including food, treats, and accessories at "Unleashed—The Shop." Unleashed by PetCo sells similar pet care products, such as food, treats, and accessories. At least some of these products are similar in appearance and function. (See Aff. of Blumgart Exs. 15 & 20.) Even PetCo concedes that, in some respects, the two companies may have products in common. (Defs.' Mem. of Law in Opp'n to Mot. for a Prelim. Inj. 21.) The similarity of the two companies' goods weighs in favor of UDDC. The fact that Petco may offer more products than UDDC does not necessarily dispel the possibility of consumer confusion. See Beacon Mut. Ins. Co., 376 F.3d at 18-19.

---

[4] Whether Fetch! by PetCo provides services in Massachusetts is irrelevant because Fetch! does not infringe UDDC's "Unleashed" mark.

### 3. Relationship Between the Parties' Channels of Trade, Advertising, and Classes of Prospective Purchasers

These three factors are generally considered together. Beacon Mut. Ins. Co., 376 F.3d at 19. UDDC and PetCo target the same class of prospective purchasers (i.e., dog owners in Massachusetts), but via different channels of trade. UDDC sells its pet care products primarily to preexisting customers of its day care and grooming services. (See Aff. of Muriel Randolph ¶ 16 (culling UDDC's sales records to reveal that 660 of 669 retail customers in the last ten years were existing clients).) In contrast, PetCo only engages in retail sales. Both parties advertise in print, online, and via social networking sites, but UDDC concedes that its local, in-house advertising pales in comparison to PetCo's national, professional advertising in terms of budget and scale. Operating in different channels of trade and using different calibers of advertising minimize the likelihood of consumer confusion.

### 4. Evidence of Actual Confusion

UDDC contends that actual confusion has already occurred. UDDC points to the affidavits of Scofield and Hall. Scofield states: "The impression conveyed to me by the Petco [sic] signs and advertising . . . is that Petco [sic] either acquired, or is somehow affiliated or connected with [UDDC]." (Aff. of William A. Scofield ¶ 14.) Hall indicates: "I thought that the owner of [UDDC] must be doing right to have Petco [sic] partnering with his business to open up another new location in that very busy plaza." (Aff. of Joanne S. Hall. ¶ 5.) Additionally, Blumgart mentions in his affidavit that an employee of a local veterinarian wanted to inquire with UDDC about a job at Unleashed by PetCo.

PetCo contends that these affidavits do not establish actual confusion. Actual confusion must be "commercially relevant," i.e., confusion capable of inflicting "injury in the form of . . . a diversion of sales, damage to goodwill, or loss of control over reputation on the trademark

holder." Beacon Mut. Ins. Co., 376 F.3d at 15. Neither Scofield nor Hall suggest that they were so confused that they accidentally purchased goods from Unleashed by PetCo thinking they were purchasing supplies from UDDC. See Astra Pharm. Prods., Inc., 718 F.2d 1201, 1207 (1st Cir. 1983) (finding no actual confusion without evidence "that anyone ever bought a Beckman analyzer thinking it came from Astra, or that anyone ever bought Astra products believing that they came from Beckman"). Hall's affidavit, moreover, proves that no harm to UDDC's goodwill has occurred. See Bear Republic Brewing Co. v. Cent. City Brewing Co., -- F. Supp. 2d --, 2010 WL 2330411, at *12 (D. Mass. June 7, 2010) (explaining that loss of goodwill includes proof that consumer reviewed or recommended one product thinking it was the other). Hall marched into Unleashed by PetCo in Beverly to tell the manager that she did not "think it was fair for Petco [sic] to just come into Beverly and take over the name of a business that's been in Beverly for ten (10) years." (Aff. of Joanne S. Hall ¶ 8.)

Blumgart's example of an individual who wanted to inquire with UDDC about a job at Unleashed by PetCo also does not establish actual confusion. Actual confusion must be in the mind of a relevant person, i.e., actual or potential purchasers or "others whose confusion threatens the trademark owner's commercial interest in the mark." Beacon Mut. Ins. Co., 376 F.3d at 16. A prospective employee is not such a "relevant person."

In sum, UDDC's evidence does not persuasively demonstrate actual confusion.

### 5. *Defendant's Intent in Adopting the Mark*

UDDC contends that PetCo began using "Unleashed" in bad faith because PetCo was aware of its mark. However, "[m]ere knowledge of the existence of a competitor's mark is insufficient to prove bad faith." NEC Elecs., Inc. v. New Eng. Circuit Sales, Inc., 722 F. Supp. 861, 866 (D. Mass. 1989). Bad faith requires proof that one party intended to capitalize on the holder's reputation/goodwill and confusion between the marks. See id. Here, the evidence

12

submitted by PetCo shows that PetCo conducted a full trademark search before selecting "Unleashed by PetCo," and that search revealed that Blumgart had abandoned his application for the mark "Unleashed." Thus, the evidence shows that PetCo took affirmative steps to avoid treading on other businesses' reputation and goodwill.

      6.     *Strength of the Plaintiff's Mark*

"Encroachment on a strong mark tends to produce the greatest likelihood of confusion;" whereas, "confusion is said to be less likely where weak marks are involved." Little Caesar Enters., Inc. v. Pizza Caesar, Inc., 834 F.2d 568, 571 (6th Cir. 1987). A mark's strength turns on length of time a mark has been used; the plaintiff's relative renown in its field; the plaintiff's vigilance in promoting its mark; the number of similar registered marks in the field; and the success of other firms in registering similar marks. Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 11 (1st Cir. 1996); Copy Cop, Inc. v. Task Printing, Inc., 908 F. Supp. 37, 46 (D. Mass. 1995). Because these factors were addressed in detail during the secondary meaning analysis, only a brief recap is needed here. UDDC has used the mark "Unleashed" for eight years, but the mark has not acquired secondary meaning; its advertising has been sporadic; it abandoned its USPTO application; and numerous other companies in the pet care products and services market use similar marks. UDDC's mark is weak, undercutting its claim of consumer confusion.

In sum, seven out of the eight Pignon factors weigh in PetCo's favor. Accordingly, the Court concludes that UDDC has not shown a likelihood (let alone a substantial likelihood) that it can establish a likelihood of confusion resulting from PetCo's use of "Unleashed" or that PetCo has violated section 43(a) of the Lanham Act.

## IV. Other Preliminary Injunction Factors

Close analysis of the other preliminary injunction factors is not necessary. See New Comm Wireless Servs. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) ("[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."). But, in brief, the remaining factors also weigh in PetCo's favor.

Irreparable harm is presumed in trademark infringement cases only when the plaintiff has shown a likelihood of success on the merits. Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992). Absent a likelihood of success on the merits, the presumption does not apply and proof of actual harm is required. See Calamari Fisheries, Inc., 698 F. Supp. at 1013. UDDC offers no evidence that PetCo's use of "Unleashed" has actually harmed its sales, reputation, or goodwill.

The balance of hardships also tips in PetCo's favor. While there is no evidence of actual harm to UDDC if the injunction does not issue, PetCo has offered evidence that it will suffer substantial economic harm if the injunction issues. PetCo says it would need to re-brand its Massachusetts stores at a cost of $1.5 million.

Absent infringing activities, the public interest is best served by competition between UDDC and PetCo. See Bear Republic Brewing Co., 2010 WL 2330411, at *16.

## V. Conclusion

For the foregoing reasons, the plaintiff's Motion for a Preliminary Injunction (dkt. no. 4) is DENIED.

It is SO ORDERED.

      /s/ George A. O'Toole, Jr.
United States District Judge