# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNLEASHED DOGGIE DAY CARE, LLC,

          Plaintiff,

    v.

PETCO ANIMAL SUPPLIES STORES, INC.,

          Defendant.

C.A. No. 1:10-CV-10742-DJC

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

PROCEDURAL BACKGROUND ................................................................................ 2

FACTUAL BACKGROUND ....................................................................................... 3

    I.    Unleashed by Petco ..................................................................................... 3

    II.    Unleashed Doggie Day Care .................................................................... 3

    III.    UDDC's Asserted Trademark .................................................................. 4

ARGUMENT ................................................................................................................. 6

    I.    SUMMARY JUDGMENT STANDARD ..................................................... 6

    II.    PETCO IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON UDDC'S
        LANHAM ACT CLAIM ...................................................................................... 7

        A.    "Unleashed" Is Not Entitled to Trademark Protection ............................. 8

            1.    Plaintiff's Mark is Descriptive, not Distinctive ........................... 8

            2.    "Unleashed" Has Not Acquired Secondary Meaning ................. 11

        B.    Unleashed by Petco Is Not Likely to Cause Consumer Confusion ........ 14

            1.    Strength of the Mark ..................................................................... 15

            2.    Degree of Similarity of the Marks ............................................. 16

            3.    Degree of Similarity of the Goods ............................................. 18

            4.    The Relationship Between the Parties' Channels of Trade ......... 19

            5.    The Relationship Between the Parties' Advertising .................. 19

            6.    Classes of Prospective Purchasers ............................................. 20

            7.    Plaintiff Has Not Established Evidence of Actual
                 Confusion ...................................................................................... 20

            8.    Defendant Adopted "Unleashed by Petco" in Good Faith ......... 23

    II.    PETCO IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON UDDC'S 93A
        CLAIM ............................................................................................................. 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Armstar Corp. v. Domino's Pizza, Inc.*,
    615 F.2d 252 (5th Cir. 1980) ....................................................................... 9

*Astra Pharm. Prods. Inc. v. Beckman Instruments, Inc.*,
    718 F.2d 1201 (1st Cir. 1983) ..................................................................... 21

*Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.*,
    762 F. Supp. 404 (D. Mass. 1991) .............................................................. 25

*Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*,
    376 F.3d 8 (1st Cir. 2004) .....................................................................20, 21

*Bear Republic Brewing Co. v. Central City Brewing Co.*,
    716 F. Supp. 2d 134 (D. Mass. 2010) ....................................................17, 21

*Black Dog Tavern Co., Inc. v. Hall*,
    823 F. Supp. 48 (D. Mass. 1993) ................................................................ 25

*Boriquen Biscuit Corp. v. M.V. Trading Corp.*,
    443 F.3d 112 (1st Cir. 2006) ................................................................... 8, 11

*Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., Inc.*,
    9 F.3d 175 (1st Cir. 1993) .....................................................................11, 12

*Boston Duck Tours, LP v. Super Duck Tours, LLC*,
    531 F.3d 1 (1st Cir. 2008) .................................................................passim

*Bristol Myers Squibb Co. v. McNeil-PPC, Inc.*,
    973 F.2d 1033 (2d Cir. 1992) ..................................................................... 17

*CareFirst of Maryland, Inc. v. First Care, P.C.*,
    434 F.3d 263 (4th Cir. 2006) ..................................................................... 10

*Carroll v. Xerox Corp.*,
    294 F.3d 231 (1st Cir. 2002) ....................................................................... 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................... 6

*Coca-Cola Co. v. Snow Crest Beverages*,
    162 F.2d 280 (1st Cir. 1947) ..................................................................... 16

*Dick's Sporting Goods, Inc. v. Dick's Clothing and Sporting Goods, Inc.*,
    1999 WL 639165 (4th Cir. Aug. 20, 1999)..........................................................................12

*Donchez v. Coors Brewing Co.*,
    392 F.3d 1211 (10th Cir. 2004)......................................................................................10

*Estate of Beckwith, Inc. v. Comm'r of Patents*,
    252 U.S. 538 (1920)........................................................................................................17

*Fed. Trade Comm'n v. Staples, Inc.*,
    970 F. Supp. 1066 (D.D.C. 1997)...................................................................................18

*Freedom Sav. and Loan Ass'n v. Way*,
    757 F.2d 1176 (11th Cir. 1985).......................................................................................10

*Garside v. Osco Drug, Inc.*,
    895 F.2d 46 (1st Cir. 1990)...............................................................................................7

*Hachikian v. FDIC*,
    96 F.3d 502 (1st Cir. 1996)...............................................................................................6

*I.P. Lund Trading ApS v. Kohler Co.*,
    163 F.3d 27 (1st Cir. 1998).............................................................................................12

*I.P. Lund Trading v. Kohler Co.*,
    118 F. Supp. 2d 92 (D. Mass. 2000).................................................................................6

*Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing
    Center*, 103 F.3d 196 (1st Cir. 1996).....................................................................6, 7, 14

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
    456 U.S. 844 (1982)........................................................................................................11

*J.D. Williams & Co. v. American Home Mortgage Investment Corp.*,
    2005 WL 1429271 (W.D. Okla. June 13, 2005) .............................................................11

*Labrador Software, Inc. v. Lycos, Inc.*,
    32 F. Supp. 2d 31 (D. Mass. 1999)...................................................................................9

*Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*,
    834 F.2d 568 (6th Cir. 1987)...........................................................................................17

*Miles v. Great Northern Ins. Co.*,
    656 F. Supp. 2d 218 (D. Mass. 2009).............................................................................23

*Pignons SA de Mecanique v. Polaroid Corp.*,
    657 F.2d 482, 489-91 (1st Cir. 1981) .......................................................................passim

*Pump, Inc. v. Collins Mgmt., Inc.*,
  746 F. Supp. 1159 (D. Mass. 1990)..................................................................................... 25

*Riverbank, Inc. v. River Bank*,
  625 F. Supp. 2d 65 (D. Mass. 2009)............................................................................14, 21

*Schwan's IP, LLC v. Kraft Pizza Co.*,
  460 F.3d 971 (8th Cir. 2006)............................................................................................. 7

*Storage Tech. Corp. v. Custom Hardward Eng. & Consulting, Ltd.*,
  2006 WL 1766434 (D. Mass. June 28, 2006) ................................................................. 23

*Tyco Healthcare Group LP v. Kimberly-Clark Corp.*,
  463 F. Supp. 2d 127 (D. Mass. 2006)............................................................................... 17

*U.S. Search, LLC v. U.S. Search.com Inc.*,
  300 F.3d 517 (4th Cir. 2002).............................................................................................. 10

*Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*,
  22 F.3d 1527 (10th Cir. 1994)........................................................................................... 10

*Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*,
  527 F.3d 1045 (10th Cir. 2008).......................................................................................... 7

*Yankee Candle Co. v. Bridgewater Candle Co.*,
  259 F.3d 25 (1st Cir. 2001) .............................................................................................. 12

## STATUTES

15 U.S.C. § 1125(a)............................................................................................................ 2, 7

Mass. Gen. Law ch. 93A.............................................................................................2, 7, 24, 25

## OTHER AUTHORITIES

2 Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:2
  (4th ed. 2008) ..........................................................................................................9, 12, 14

4 Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:85....... 9, 15

Fed. R. Civ. P. 56(c)......................................................................................................... 1, 6

Mass.Gen.L. ch. 93A, sec. 2(a) (1986)................................................................................ 24

Restatement (Third) of Unfair Competition § 20 cmt. b (1995)................................................ 21

Restatement of Torts § 729 comment g................................................................................ 9

Pursuant to Fed. R. Civ. P. 56(c), Defendant Petco Animal Supplies Stores, Inc. ("Petco"), through its attorneys, submits this memorandum of law in support of Defendant's Motion for Summary Judgment.

## INTRODUCTION

The Plaintiff, Unleashed Doggie Day Care, LLC ("UDDC"), commenced this action against Petco in April 2010, challenging Petco's opening of a new, smaller concept store, "Unleashed by Petco," in Beverly, Massachusetts.  Even though they are substantially non-competing businesses, UDDC asserts that Petco's new store infringes UDDC's alleged rights in the mark "Unleashed."  The fact is, however, that UDDC does not own a registered trademark for "Unleashed" and it cannot establish common law rights in that term.

The summary judgment record demonstrates that UDDC was founded as a dog sitting and grooming business, and later added a small retail shop.  The Plaintiff began using the term "Unleashed"[1] because it is "basically a description" of its business and "described the services and products that [it] offered."  (Blumgart Dep. I 13:4-9, June 24, 2010, Spinney Decl. Ex. A.) As a descriptive mark, "Unleashed" is not entitled to protection unless UDDC can prove that it has acquired secondary meaning.  But UDDC has not produced a customer survey or any other evidence sufficient to establish that "Unleashed" means UDDC in the minds of the public.  In short, there is no record evidence to support UDDC's claim that "Unleashed" is entitled to trademark protection.

While the analysis could stop there, the summary judgment record in this case further shows that there is no likelihood that consumers will be confused between Unleashed by Petco

---

[1] Although UDDC contends that its mark is "Unleashed" (Am. Compl., ECF No. 63, ¶ 5), the record shows that UDDC stopped using that term standing alone as its brand name years ago; instead it has held itself out as "Unleashed Doggie Day Care" and "Unleashed—the Shop".  (Blumgart Dep. I 3:19-20, 136:2-8.)

and UDDC.  Accordingly, the record of undisputed material facts does not support UDDC's

claims against Petco, and Petco is entitled to summary judgment.

## PROCEDURAL BACKGROUND

UDDC filed this action on April 30, 2010, alleging two counts against Petco—trademark

infringement under the Lanham Act § 43(a) and unfair business practices under Mass. Gen. Law

ch. 93A.  (Compl., ECF No. 1.)  UDDC subsequently filed a Motion for Preliminary Injunction

to attempt to prevent Petco from using the word "Unleashed" to refer to its concept store,

"Unleashed by Petco."  (Mot. for Prelim. Inj., ECF No. 4.)  After an expedited discovery process

at the request of both parties, extensive briefing and a hearing on August 11, 2010, this Court

(Judge O'Toole) denied the Plaintiff's Motion.  (Op. and Order, ECF No. 53.)  In so doing, the

Court stated, "UDDC has not shown a likelihood (let alone a substantial likelihood) that it can

establish a likelihood of confusion resulting from Petco's use of "Unleashed" or that Petco has

violated section 43(a) of the Lanham Act."  (Op. and Order at 13.)

After UDDC's Motion was denied, the parties proceeded with additional discovery.  On

April 1, 2011, UDDC served Supplemental Initial Disclosures identifying fifty-nine potential

witnesses.   Because UDDC did not produce details regarding their potential testimony, Petco

filed a Motion to Strike those individuals from being named as possible witnesses in this case.

(Mot. to Strike Plaintiff's Supplemental Initial Disclosures, ECF No. 61.)  This Court granted

Petco's Motion, ordering UDDC to "specifically identify what information each individual has

about the actual confusion between the Plaintiff's business and the Defendant's."  (June 15, 2011

Electronic Order.)  To resolve a disagreement whether UDDC fully complied with that Order,

the parties stipulated that UDDC would not attempt to use any of the witnesses for whom it had

not provided the required information.  (Status Conf. Tr. 4:5-24, Sept. 28, 2011, Spinney Decl. Ex. D.)

The Plaintiff amended its complaint on May 20, 2011 (Am. Compl., ECF No. 63), but in doing so it did not add any new counts against Petco.  Nor did UDDC add any factual allegations for which there is a dispute material to the claims in this case.

## FACTUAL BACKGROUND

### I.    Unleashed by Petco

Defendant Petco operates large-scale retail pet supply stores ("Petco Main") nationwide. In late 2008, Petco undertook to develop a presence in local neighborhoods, ultimately creating a new concept store called "Unleashed by Petco."  This new store model is designed to bring Petco Main's best-selling retail products into more convenient, hometown locations.  (Seremetis Decl. ¶ 15.)  Before selecting a brand for its new concept store, Petco evaluated the availability of potential marks (Little Decl. Ex. A), and developed the mark "Unleashed by Petco" to distinguish itself from other users of "Unleashed" (*see* Seremetis Decl. ¶ 11).

Petco first launched its new concept stores in Southern California in 2009, and later rolled out stores across the country.  (*Id.* ¶ 29.)  Petco has opened seven Unleashed by Petco stores in Massachusetts, including one in Beverly on May 15, 2010.  (*Id.* ¶ 21.)[2]  Unleashed by Petco stores in Massachusetts sell pet supplies, but they have no pet sitting or pet grooming facilities and do not offer those services through any other party.  (Little Decl. ¶¶ 10, 17.)[3]

### II.    Unleashed Doggie Day Care

Plaintiff UDDC is a pet daycare and grooming business, with a small retail store, in

---

[2] Although the parties differ as to the date on which the Unleashed by Petco store opened (UDDC claims it opened on April 26, 2010, Am. Compl. ¶ 9), the timing difference is immaterial to the issues in this dispute.
[3] Although UDDC contends that Unleashed by Petco offers services in Massachusetts through a partnership with Fetch! Pet Care, there is no record evidence supporting that allegation.  Stmt. of Undisputed Mat. Facts at fn. 2.

Beverly, Massachusetts.  UDDC is owned and operated by Oliver Blumgart.  Blumgart began his business as Beverly Petsitters in June 2000—picking up dogs and taking them for hikes in the area.  (Blumgart Aff., ECF No. 6, ¶ 2.)  He became known for allowing the dogs to roam offleash while under his supervision.  (Blumgart Dep. I 14:2-19.)

In March 2002 Blumgart opened a sister store, A Cut Above the Rest, to provide dog grooming.  (Blumgart Aff. ¶ 3.)  Blumgart looked into getting a trademark for that name, but after discovering a haircut place already used it, changed the name to "Unleashed - The Shop." (Blumgart Dep. I 10:22-12:7.)  This arm of the business moved around Beverly, ultimately settling at its current location at 12 Lothrop Street in 2007.  (*Id.* 6:5-10:10.)

Blumgart eventually moved his residence and UDDC to 8 Trask Street, where he operates the daycare facility on the first floor and in the yard outside. (Blumgart Dep. I 3:12-4:8).  There are no retail products available for purchase and no cash register at 8 Trask Street, only the doggie daycare and pet sitting service.  (*Id.* 5:23-6:4; Blumgart Dep. II 237:17-23, Sept. 3, 2011, Spinney Decl. Ex. B.)  While both UDDC locations provide pet sitting services, Unleashed - The Shop also offers dog grooming services and some retail products.  (Blumgart Aff. ¶ 3.)  Retail sales, however, account for less than 9% of UDDC's business.  (Blumgart Dep. I 103:10-125:9, Exs. 6-9, ECF No. 52, Exs. D, F, E; ECF No. 40, Ex. G.)  UDDC obtains new business largely from word-of-mouth recommendations from existing clients.  (Blumgart Dep. I 164:15-22.)

### III.   UDDC's Asserted Trademark

"Unleashed" is not a registered mark.  (Op. and Order at 4; Blumgart Dep. I 98:21-99:13.)  On June 3, 2003, Mr. Blumgart, who claims to personally own the mark "Unleashed" (Blumgart Dep. I 15:21-16:4), applied to the USPTO to register that mark for the categories "Dog Grooming and Boarding Services and supplies and Retail store services in the field of

animal and pet supplies" (*id.* Ex. 1, ECF No. 40, Ex. E), but the USPTO deemed his recitation of services unacceptable as indefinite (*id.* at U0075.)  In response, Blumgart filed an Amendment deleting retail from the goods and services description in his application, narrowing the scope to just dog boarding services.  (*Id.* at U0070.)

The registration process alerted Blumgart to the fact that there were other users of "Unleashed" in his requested field of use.  (*Id.* at U0073-83.)  Specifically, the PTO initially found that there was a likelihood of confusion between UDDC's "Unleashed" and a dog/cat daycare called "Unleash Yourself" in Portland, Oregon.  (*Id.* at U0073-74.)  In response, Blumgart argued that there was no likelihood of confusion between "Unleashed" and "Unleash Yourself" (*id.* at U0071) when the marks as used were considered in their entirety (*id.* ("the attorney must consider the likelihood of confusion of the marks as a whole")), which succeeded in getting his application published for comment.[4]

On April 4, 2005, Christi Blaskowski, dba Unleashed, Behavior and Training Services of Shakopee, Minnesota, filed an Opposition to Blumgart's application asserting prior use of that mark for dog care services.  (*Id.* at U0090-93.)  In the face of that Opposition, Blumgart abandoned his trademark application. (*Id.*)[5]  Blumgart admits that he understood he was not free to use "Unleashed" alone as his mark: "We called it Unleashed-Doggie Daycare because originally I wanted to call it Unleashed, but was told that it had to describe or be used as an adject—I can't remember the exact thing, but you couldn't just use the one word." (Blumgart Dep. I 22:4-8.)  As displayed on its products, advertisements, web page, and business cards

---

[4] Mr. Blumgart continues to agree that there is no likelihood of confusion between "Unleashed" and "Unleash Yourself." (Blumgart Dep. II 274:2-11.)

[5] Nevertheless, Blumgart continued to affix the symbol ™ to the word "Unleashed" on UDDC documents to suggest to the public that he owned or was pursuing trademark rights in that term. (Blumgart Dep. I 94:20-95:2).  UDDC even falsely represented, "Unleashed™ is a registered Trademark of Unleashed™ Doggie Day Care, LLC" on one of its client forms. (*Id.* 98:4-8, Ex. 3, ECF No. 40, Ex. F).

produced during discovery, the Plaintiff continues to hold itself out as "Unleashed Doggie Day Care, LLC," "Unleashed - the Shop" and "unleasheddoggiedaycare.com." (*Id.* 3:19-20, 6:7-9, 136:2-8; ECF No. 6; ECF No. 39-3.)

UDDC often displays its mark in connection with a paw logo ("Composite Marks," Blumgart Aff., Exs. 13-15 (ECF No. 6); Spinney Decl. Ex. H, depicted in Part II.B.2, *infra*). In contrast, the Unleashed by Petco mark consistently depicts the word "unleashed" underlined by a collar and leash bearing the words "by Petco" in the corporate Petco Main font. (Seremetis Decl. ¶ 18, Ex. E (depicted in Part II.B.2, *infra*).)

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate in trademark infringement cases, as elsewhere, 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 199 (1st Cir. 1996); *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *I.P. Lund Trading v. Kohler Co.*, 118 F. Supp. 2d 92, 101 (D. Mass. 2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Although a court must examine the record in the light most favorable to the nonmovant and resolve all reasonable inferences in that party's favor, *see Hachikian v. FDIC*, 96 F.3d 502, 504 (1st Cir. 1996), to defeat a properly documented motion

for summary judgment, especially as to claims that the nonmovant bears the burden of proof, a nonmovant "must reliably demonstrate that specific facts sufficient to create an authentic dispute exist." *Int'l Ass'n of Machinists and Aerospace Workers*, 103 F.3d at 200 (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)).

UDDC has the burden of proof as to the two essential parts of its claims—that its alleged mark is entitled to protection and that Petco's use of the mark is likely to cause confusion. *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 974 (8th Cir. 2006) (noting that without a trademark registration, plaintiff bears the burden of proving a trademark is entitled to protection); *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) ("the party alleging infringement has the burden of proving likelihood of confusion").  Given the pleadings, depositions, answers to interrogatories, and the affidavits that have been submitted in this case, it is apparent that UDDC is unable to support either its Lanham Act Section 43(a) claim or Mass. Gen. Laws. ch. 93A claim.  As a result, Petco is entitled to judgment as a matter of law.

## II.   PETCO IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON UDDC'S LANHAM ACT CLAIM

Mr. Blumgart testified that either he or the business owns the "Unleashed" mark (he is not certain, but believes because he owns the company he owns the mark).  (Blumgart Dep. I 15:21-16:4.)  Either way, as this Court already has acknowledged, "UDDC's purported mark 'Unleashed' is not a registered mark."  (Op. and Order at 4.)  To succeed on a claim of trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[6] based on an

---

[6] 15 U.S.C. § 1125(a) provides, in relevant part,

> Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial

unregistered mark, UDDC "must demonstrate both that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion." *Boriquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006). As the summary judgment record shows, UDDC is able to demonstrate neither.

### A.  "Unleashed" Is Not Entitled to Trademark Protection

### 1.    Plaintiff's Mark is Descriptive, not Distinctive

As this Court, Blumgart and UDDC's counsel have agreed, "'Unleashed,' when used by a company that provides day care for dogs, is descriptive." (Op. and Order at 5, 6; Tr. of May 26, 2010 Conf. (Spinney Decl. Ex. C), 13:15-21; Blumgart Dep. I 13:4-9.) Accordingly, it is not automatically entitled to trademark protection. "To be eligible for trademark protection, a mark must qualify as distinctive." *Boriquen*, 443 F.3d at 116. "Whether a mark is distinctive depends upon where the mark fits along a spectrum of categories: generic, descriptive, suggestive, arbitrary, and fanciful marks." Op. and Order at 4 (citing *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008)). A descriptive mark is tentatively considered non-distinctive and can only attain distinctive status upon a showing of secondary meaning. *Boriquen*, 443 F.3d at 116.

The Plaintiff bears the burden in this case, but has failed to submit evidence sufficient to establish that "Unleashed" is anything but descriptive. In fact, Plaintiff's counsel acknowledged that the Plaintiff's mark is descriptive of its dog care services. (Tr. of May 26, 2010 Conf. 13:15-21.) Moreover, Mr. Blumgart testified that Unleashed Doggie Day Care "was basically a description of what we were doing and what we felt described the services and products that we offered." (Blumgart Dep. I 13:4-9.) The mark is descriptive of UDDC's principal services, *to*

---

activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*wit*, the way the Plaintiff interacts with its customers' pets (i.e., without a leash) when performing pet care services.  *Id.* 14:11-16; *see Boston Duck Tours*, 531 F.3d at 13 ("Descriptive marks are those that 'convey an immediate idea of the ingredients, qualities or characteristics of the goods' to which they are attached.").

This is also true of the Composite Marks because "Doggie Day Care" and "The Shop" simply add further descriptive terms concerning the Plaintiff's two facilities.  Consistent with Plaintiff's concession, the mark Plaintiff seeks to enforce is often used by companies in the pet care industry or commentators when describing the nature of services offered by some providers.  *See* Little Decl. Ex. A (trademark search results revealing 132 other entities using the mark "Unleashed"); *id.* Ex. B (common law search revealing 21 entities using the mark "Unleashed"); *Labrador Software, Inc. v. Lycos, Inc.*, 32 F. Supp. 2d 31, 33 (D. Mass. 1999) (holding computer software company's trademarks, "Labrador," "E-Retriever," "Labrador E-Retriever," "Labrador Software," and "Get Engine," used with a Labrador dog image, were descriptive in light of many similar marks in the industry); *see also* 2 Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:19 ("A term that is descriptive of the characteristics of a product only by use of simile or metaphor may be descriptive").  Similarly, the use of the term "unleashed" by others in the industry suggests that little imagination is required to associate the term with pet-related services.

In such a crowded market, distinctiveness among marks becomes further blurred as consumers cannot easily distinguish one seller from another.  *See* 4 MCCARTHY ON TRADEMARKS § 11:85.  As a result, courts have routinely classified marks in crowded markets as entitled to a narrower scope of protection.  *See Armstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60, 264-65 (5th Cir. 1980) (citing Restatement of Torts § 729 comment g) ("The

greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion."); *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 270 (4th Cir. 2006) (holding CAREFIRST for a health insurance company to be a weak mark because of the frequent use of "care" and "first" in health care companies' marks); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1533 (10th Cir. 1994) (noting extensive use of "first bank" suggests it is a weak term when applied to the provision of financial services); *Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1182 (11th Cir. 1985) (concluding use of name "Freedom" by several other businesses in the area weighs in favor of finding the mark weakly protected). In fact, as early as 2005, Petco was one of those in the crowd. Starting in 2005, going national by 2007, Petco used the word "unleashed" to market and promote Chihuahua Race events at its stores, including those in Boston, Massachusetts. (*See* White Decl. (ECF No. 33), ¶¶ 3-6.)

Because "Unleashed" is descriptive with respect to the plaintiff's primary business services, the mark is to be treated as descriptive when applied to its ancillary retail business as well. *See, e.g.*, *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523, 525 (4th Cir. 2002) (rejecting the plaintiff's argument that its mark "U.S. Search" was suggestive because it was suggestive of a small part of its executive recruiting business); *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1217 & n.2 (10th Cir. 2004) (suggesting that the court would reject the plaintiff's argument that "beerman" was suggestive because the plaintiff used it not only "for beer vending services," but also "to identify his entertainment and promotional services"). Notably, Plaintiff's rough accounting system attributes, at most, no more than 9% of annual sales to "retail" sales, as opposed to dog sitting, grooming and other pet care services. (Blumgart Dep. I 103:10-125:9, Exs. 6-9.) We know that even that percentage is actually inflated because Plaintiff's

QuickBooks software system does not distinguish charges for products, such as dog food, that were actually consumed in connection with the dog sitting and boarding services. (*Id.*) As a result, how small a percentage of its total business consists of pure retail sales, the Plaintiff cannot say. (*Id.*) With at least 91% of UDDC's business consisting of off-leash boarding, pet care, and grooming services, as Mr. Blumgart testified (Blumgart Dep. I 13:4-9), Plaintiff's alleged mark is merely descriptive and not subject to protection.

### 2.    "Unleashed" Has Not Acquired Secondary Meaning

Because the Plaintiff's mark is descriptive, it can only "attain distinctive status upon an affirmative showing of secondary meaning." *Boriquen*, 443 F.3d at 116. In its Opinion and Order denying the Plaintiff's Motion for Preliminary Injunction, this Court found the evidence insufficient to establish secondary meaning. (Op. and Order at 7, 8.) The Plaintiff has produced little additional evidence since that ruling. Most importantly, the Plaintiff still has not produced evidence demonstrating that its alleged mark has acquired secondary meaning.

Where infringement of an unregistered mark is alleged, the plaintiff bears the burden of proving that a descriptive mark has acquired secondary meaning. *Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 181 (1st Cir. 1993). UDDC must establish that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself." *Boriquen*, 443 F.3d at 116 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851 n. 11 (1982)). Proof "entails vigorous evidentiary requirements." *Id.* The Plaintiff must prove that a substantial portion of the consuming public associates "Unleashed" specifically with the Plaintiff's business. *See Boston Beer Co.*, 9 F.3d at 182. This is particularly difficult in a crowded market such as this one, where the public is less likely to associate a mark with a particular business. *See J.D. Williams*

*& Co. v. American Home Mortgage Investment Corp.*, 2005 WL 1429271, at *8 (W.D. Okla. June 13, 2005). In this case, UDDC has not met its burden.

Survey evidence has become a well-recognized means of establishing secondary meaning. *Boston Beer Co.*, 9 F.3d at 182. In fact, the only direct evidence of secondary meaning are customer surveys and customer testimony. *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 43 & n.12 (1st Cir. 2001); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 42 (1st Cir. 1998). Nevertheless, UDDC has not presented a survey. UDDC has only submitted two very limited customer affidavits, (Scofield Aff. (ECF No. 22); Hall Aff. (ECF No. 23)), which together do not meet the "vigorous" standard that a customer survey might satisfy. *See* 2 MCCARTHY ON TRADEMARKS § 15:42 ("To be effective, a survey must be carefully conducted by an expert survey director . . . [Q]uestions to be asked in the survey must be carefully phrased so as to elicit honest and unprompted consumer reaction . . ."). Plaintiff's two affidavits lack evidence of the widespread recognition connecting the mark with its source that courts have looked for to identify secondary meaning. *See, e.g.*, *Dick's Sporting Goods, Inc. v. Dick's Clothing and Sporting Goods, Inc.*, 1999 WL 639165, at *8 (4th Cir. Aug. 20, 1999).

Plaintiff also is unable to identify circumstantial evidence sufficient to demonstrate secondary meaning. Circumstantial evidence of secondary meaning could include "the length and manner of the use of the trade dress, the nature and extent of advertising and promotion of the trade dress, and the efforts made to promote a conscious connection by the public between the trade dress and the product's source." *Yankee Candle*, 259 F.3d at 43-44 (*citing Boston Beer*, 9 F.3d at 182). "Other factors may include the product's 'established place in the market' and proof of intentional copying. *Yankee Candle*, 259 F.3d at 44 (citing *I.P. Lund*, 163 F.3d at

42).  The Plaintiff has not submitted any such evidence from which a reasonable jury could find secondary meaning.

First, while Plaintiff may have used the term "Unleashed" as part of its name and Composite Marks since it was formed in 2005, its use has varied significantly.  (Blumgart Dep. 81:21-82:9.)  Such inconsistent use cannot be said to give rise to an assumption that the consuming public has formed an association between "Unleashed" and the Plaintiff's services.

Further, Plaintiff's evidence of promotional and marketing activity falls far short of establishing secondary meaning.  This Court previously found that the Plaintiff's "advertising efforts do not suffice to establish secondary meaning."  (Op. and Order at 8.)  Since then, the record shows that the Plaintiff has only purchased one print ad in addition to the telephone book listing, reporting expenditures from June 2010 to May 2011 of $2,692.55.  (Blumgart Dep. II 224:20-226:24, Ex. 100 (Spinney Decl. Ex. E).)  Other than that, Plaintiff's financial records identify a total of $56,851.24 in advertising expenses over the ten year period 2000-2010.  (Blumgart Dep. I Ex. 11 (ECF No. 40, Ex. D).)  UDDC has spent no more than $5,500 on average each year to advertise—expenditures that did not even offset Petco's prior investment in that mark in the relevant area, let alone establish secondary meaning.  In fact, "the Plaintiff concedes that its advertising has not created an association between its services and "Unleashed," but that the growth in its business is largely based on word of mouth recommendations."  (Op. and Order at 8; Blumgart Dep. I 164:15-22.)

Finally, UDDC has submitted no evidence of copying.  In fact, the evidence shows that Petco launched its new "Unleashed by Petco" concept stores in California, nowhere near UDDC.  (Seremetis Decl. ¶ 29.)  The record further shows that Petco only selected the name for its new

stores after conducting a full trademark search (Little Decl. ¶ 3; Seremetis Decl. ¶ 12), which revealed that Blumgart had abandoned his application for the mark "Unleashed."

Accordingly, no reasonable jury could conclude from the record that Plaintiff's use of "Unleashed" has acquired secondary meaning, especially given the very crowded field of marks using "Unleashed" in connection with pet services (*see* Little Decl. Exs. A, B; *see* Part II(A)(1), *supra*.)  Without inherent distinctiveness or secondary meaning, "Unleashed" as used by the Plaintiff is not a protectable mark.  *See Boston Duck Tours*, 531 F.3d at 13 n.9 ("Without achieving distinctiveness, either inherently or through the acquisition of secondary meaning, a designation does not have the legal status of a 'trademark'") (quoting 2 MCCARTHY ON TRADEMARKS § 11:2 (4th ed. 2008)).

### B.      Unleashed by Petco Is Not Likely to Cause Consumer Confusion

Since this Court issued its Order denying Plaintiff's motion for preliminary injunction, in part because "Unleashed by Petco is unlikely to result in consumer confusion" (Op. and Order at 8), the Plaintiff has not identified or produced any additional evidence from which a reasonable jury could reach a contrary conclusion.  To prove its claim, UDDC must be able to demonstrate more than just a theoretical possibility of confusion; it must show a "substantial likelihood of confusion."  *Riverbank, Inc. v. River Bank*, 625 F. Supp. 2d 65, 69 (D. Mass. 2009) (citing *Int'l Ass'n of Machinists and Aerospace Workers*, 103 F.3d at 200-01).  In *Pignons SA de Mecanique v. Polaroid Corp.*, the First Circuit set out eight factors used to determine the likelihood of consumer confusion.  657 F.2d 482, 489-91 (1st Cir. 1981).  An analysis of those factors, set forth below, compels the conclusion that there is no substantial likelihood of confusion as to the source of the products provided by Unleashed by Petco.

14

### 1.      Strength of the Mark

A strong mark would be afforded broader protection against infringement than a weak mark.  *Id.* at 492.  The strength of a mark is determined by examining the mark conceptually and commercially.  *See Boston Duck Tours*, 531 F.3d at 16 (explaining that when a mark contains generic terms as part of a composite mark, the court should also examine the mark's conceptual strength and its inherent distinctiveness).  Conceptually, Plaintiff's mark is weak because it is made up wholly of descriptive terms such as "shop," "dog," and/or "day care."  A composite mark using descriptive phrases is generally a weak mark.  *See id.* at 23.  Adding to its weakness is the evidence that shows that the market is crowded with use of "Unleashed" to refer to pet care services around the country.  *See* Section II(A)(1), *supra*.  In a crowded market, a mark tends to be weak where there are numerous sellers who use similar marks.  *See* 4 McCarthy on Trademarks § 11:85.

Although a mark may overcome this weakness by acquiring secondary meaning, *id.*, as discussed above, *see* Section II(A)(2) *supra*, the Plaintiff's mark has not acquired such strength. Unlike the plaintiff in *Boston Duck Tours*, who presented evidence of a reasonably strong mark where it increased its duck boat fleet from four to twenty-four in twelve years, had 585,000 customers and was the only duck tour in the Boston area, *Boston Duck Tours*, 531 F.3d at 18, the Plaintiff has evidence of only 669 revenue producing customers (dating back to before the Plaintiff was even formed) (*see* Randolph Decl. ¶ 12), and has not increased the number of outlets for its services since it was formed in 2005.  In short, the Plaintiff's mark is commercially weak.  *See Boston Duck Tours*, 531 F.3d at 16 n.14 ("'Commercial strength' denotes the mark's consumer recognition value in the marketplace.").

### 2.      Degree of Similarity of the Marks

In this case, there is a minimal degree of similarity between the Parties' marks. "[S]imilarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features." *Polaroid*, 657 F.2d at 487.[7]  Marks are compared as ordinary purchasers would compare them, that is, on the basis of similarities in their general appearance, type of script used for the infringing words, the color of the words, the composition of the background, and the spelling of the words. *Coca-Cola Co. v. Snow Crest Beverages*, 162 F.2d 280, 284 (1st Cir. 1947).

UDDC's mark is not "Unleashed" alone.  Since 2005, the Plaintiff has consistently used "Unleashed" within larger Composite Marks, with other descriptive terms intermixed, and with a distinctive paw print logo.  Further, its mark is typically in black and white.  Sometimes it uses a classic script font with thin lettering (*see* ECF No. 39-4) other times it is all uppercase in bold letters (*see* Spinney Decl. Ex. H (excerpt below)).  The mark is often accompanied by the graphic design of one or more solid black paw print(s).  In contrast, Defendant's mark is always in thick letters using a modern white font.  (Seremetis Decl. Ex. E (excerpt below).)  It is set in a brown background with a graphic design of a green and orange collar and leash that underlines the lettering.  (*Id.*)  Further, unlike Plaintiff's mark, Defendant's mark always begins with a lowercase letter.  (*Id.*)  The differences are visually striking:



---

[7] The First Circuit, in *Boston Duck Tours*, has explained that "[a]lthough 'similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features' … we give less weight to the generic portions of the parties' respective, composite marks."  *See* 531 F.3d at 24.  This exception is not applicable here, as neither party argues that the primary element of their respective composite marks—"Unleashed" —is generic.

"It is well settled that under certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer." *Polaroid*, 657 F.2d at 487.  A composite mark is considered as a whole and not based upon any one prominent feature.  *Estate of Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545-546 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail."); *Bear Republic Brewing Co. v. Central City Brewing Co.*, 716 F. Supp. 2d 134, 146 (D. Mass. 2010) (finding that the terms "Red Racer" and "Red Rocket" were not likely to be confused just because they both use the term "Red" when the overall impression of each mark is "quite different"); *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987) (holding differences between "Little Caesar" and "Pizza Caesar USA" are clear where there are differences in sound, appearance, and number if syllables).

Significantly, Defendant always uses the term "unleashed" in conjunction with "by Petco," its "home mark."[8]  Defendant's mark purposefully diminishes the chance of any confusion with any other uses of "unleashed" in the pet services space.  *See Bristol Myers Squibb Co. v. McNeil-PPC, Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992) ("prominent presence of well known trade names goes far toward countering any suggestion of consumer confusion . . . used to determine the likelihood of consumer confusion."); *Polaroid*, 657 F.2d at 487 ("in certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer"); *Tyco Healthcare Group LP v. Kimberly-Clark Corp.*, 463 F. Supp. 2d 127, 135 (D. Mass. 2006) (holding that use of the marks "FLEXI-WINGS" and "Comfort Flex wings" did not suggest a likelihood of confusion because

---

[8] The Plaintiff claims that there were signs displaying "New at Unleashed" without the "by Petco" designation at the Beverly store (Am. Compl. ¶ 15), and Petco acknowledges that at some point in 2011 a sign or cling ad that was mistakenly displayed at this store, but those signs were removed by April 2011 (Little Decl. ¶ 18).

consumers were not likely to confuse the brands).  Similarly here, consumers will recognize "Unleashed by Petco" as affiliated with the nationally known brand Petco, not UDDC.

### 3.      Degree of Similarity of the Goods

The most glaring disparity between UDDC and Unleashed by Petco is the volume of goods offered.  Unleashed by Petco's Beverly store offers 5,270 different products.  (Seremetis Decl. Ex. F.)  UDDC's comprehensive list of products offered from 2003-2011, after exclusions for non-product descriptions, comes to 406 different products.  (Blumgart Dep. I Ex. 9; Spinney Decl. Ex. G.)  Unleashed by Petco offers a fundamentally different range of products and more choices within each product category.  UDDC doesn't sell the full panoply of products because Blumgart believes "a lot of it is rubbish."  (Blumgart Dep. I 170:20-171:1.)  Instead, Unleashed - The Shop only offers selective, higher-end products.  (*Id.* 171:7-17.)

To the extent both Unleashed by Petco and UDDC offer nutritious, natural pet products, they may have some products in common. (Blumgart Dep. Ex. 9; Seremetis Decl. Ex. F.)  But overall the difference between Petco's and UDDC's respective retail services is the difference between a comprehensive retailer and a niche store.  *See Fed. Trade Comm'n v. Staples, Inc.*, 970 F. Supp. 1066, 1075 (D.D.C. 1997) (recognizing that large retailers, or superstores, constitute a separate market segment from smaller niche stores for antitrust purposes).  Further, as was the case in *Polaroid*, in which the court held that there was no likelihood of confusion where the parties' overlap in products was only a small portion of the plaintiff's business, 287 F.2d at 492, in this case, the overlap of Plaintiff's products is minimal and accounts for a small percentage of its business.  The only area where the parties compete is in the retail service of pet-related products, which in total accounts for less than 9% of the plaintiff's business.  (Blumgart Dep. I 103:10-125:9, Exs. 6-9.)

### 4.    The Relationship Between the Parties' Channels of Trade

UDDC's principal channel of trade is pet care services—daycare and grooming.  UDDC

does not compete with Petco and other large retail stores to attract a high volume of shoppers.

UDDC is not interested in one-off sales; it wants to cultivate a long-term relationship with his

clients who will keep coming back for daycare, grooming and boarding services.  (Blumgart

Dep. I 166:16-23; *see also* Randolph Decl. ¶ 16 ("culling UDDC's sales records to reveal that

660 of 669 retail customers between 2000 and 2010 were existing clients").)  There are no

shelves displaying products for customers to buy at the day care facility.  (Blumgart Dep. I 5:23-

6:2.)  Nor is there a cash register.  (*Id.* 6:3-4.)

The consumer experience inside UDDC is different from Unleashed by Petco.  Blumgart

personally cares for his clients' dogs; he makes retail sales to clients who come to pick up their

pets who were brought to UDDC for other services.  (*Id.* 169:11-170:19.)  UDDC has pet

services clients; Unleashed by Petco has shoppers.  Given the long term relationship clients have

with UDDC for daycare, grooming and board services, they are unlikely to be confused as to

whether they are shopping at UDDC or Petco's store when they run out to buy a bag of pet food.

### 5.    The Relationship Between the Parties' Advertising

As this Court has recognized, UDDC concedes that its "local, in house advertising pales

in comparison to Petco's national, professional advertising in terms of budget and scale."  (Op.

and Order at 11.)  At its grand opening of the Beverly, Massachusetts store, for example,

Unleashed by Petco put on quite a show.  In accordance with the Grand Opening How-To Guide

(Seremetis Decl. Ex. G), uniformed Unleashed by Petco employees stood on the corners at traffic

lights with large arrows pointing in the direction of the new store; oversized red, orange, yellow

and brown balloons were stationed around the parking lot (*see* ECF No. 39-5).  This was a

marketing campaign a consumer would expect from a concept store "by Petco."  Post grand-opening hoopla, Unleashed by Petco stores receive professional direction from Petco's department of marketing professionals, who develop innovative ways to bring in customers each month.  (Seremetis Decl. ¶ 23-28, Ex. H.)

Again, UDDC does not attempt to compete with Unleashed by Petco when it comes to advertising budget and scale.  Blumgart's on-the-ground advertising efforts were in print only, local, sporadic, done in-house, and inconsistently displayed the UDDC brand.  (Blumgart Dep. I 157:5-159:6, 161:11-164:21; ECF No. 6 (Exs. 13-15); ECF No. 39-4; Spinney Decl. Ex. H) Although UDDC's digital and social media campaigns reflect a desire to reach customers beyond Beverly, Blumgart states his most successful advertising is not marketing at all—it's word of mouth recommendations by clients and professionals in related trades such as veterinarians.  (*Id.* 164:15-22.)

### 6.    Classes of Prospective Purchasers

Petco concedes that for both it and the UDDC, prospective purchasers are the same. Given the other factors that weigh so heavily in the Petco's favor, however, this one alone is not determinative.  *See Polaroid*, 657 F.2d at 487-92 (noting that no one factor is determinative).

### 7.    Plaintiff Has Not Established Evidence of Actual Confusion

While the Plaintiff hangs its hat on its claim that customers have been confused upon learning of Unleashed by Petco, it has offered no admissible evidence of the type of actual confusion that is relevant to a trademark infringement claim.  Actual confusion must be "commercially relevant," which means it is capable of inflicting "commercial injury in the form of . . . a diversion of sales, damage to goodwill, or loss of control over reputation on the trademark holder."  *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 15 (1st Cir. 2004).  UDDC has not identified anyone whose opinion of UDDC has changed as a result of

20

confusion between Unleashed by Petco and UDDC.  Nor has the Plaintiff offered any evidence that would suggest that customers were so confused by the Unleashed by Petco store that they mistakenly purchased goods from Unleashed by Petco.  Courts have repeatedly refused to find actual confusion absent such evidence.  *See, e.g.*, *Astra Pharm. Prods. Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1207 (1st Cir. 1983) (finding no actual confusion absent evidence "that anyone ever bought a Beckman analyzer thinking it came from Astra" or the other way around); *Bear Republic*, 716 F. Supp. 2d at 149 (finding the evidence did not demonstrate actual confusion when "the plaintiff has not alleged that any of these occurrences resulted in a loss of sales or customers."); *Riverbank*, 625 F. Supp. at 74 (finding, in granting summary judgment for the defendant, that the record evidence did not support a finding that the alleged confusion was commercially relevant without evidence that it resulted in mistaken purchases).

While it is true that the Plaintiff "is not required to show that confusion caused lost profits or lost customers," *id.*, the Plaintiff must at least provide some evidence that shows "a significant risk to the sales or good will of the trademark owner."  *Beacon Mut. Ins. Co.*, 376 F.3d at 15 (citing Restatement (Third) of Unfair Competition § 20 cmt. b (1995)).  UDDC's bare allegation that it "has had inquiries from customers and former employees" concerning Unleashed by Petco (Am. Compl. ¶ 23) does not provide a basis for finding a likelihood of confusion.  Simply being approached by misdirected customers inquiring of a competitor's product or services is not commercially relevant confusion.  *See, e.g.*, *Bear Republic*, 716 F. Supp. 2d 134 (D. Mass 2010) (finding that a couple of questions about the allegedly infringing "Red Racer" beer did not show actual confusion with the "Racer 5" and "Red Rocket" marks).

The two affidavits that UDDC has submitted in support of its claim that actual confusion has occurred fail to describe any confusion that is relevant to a trademark infringement action.

The first affiant, William A. Scofield, was not confused about the association at all.  He

remarked, when he first saw the store, "Oh, my God.  That is the Unleashed by Petco store."

(Scofield Dep. 33:12-34:2 (Spinney Decl. Ex. F).)  A partner in a law firm specializing in

intellectual property law, Mr. Scofield testified in his affidavit that when he first saw the

Unleashed by Petco store sign, he thought that it conveyed the impression that Petco had

acquired, or was affiliated with, what he called "Oliver's Unleashed business," but that he knew

this not to be true.  (Scofield Aff. ¶¶ 14, 15.)  Whether he thought this or not, this is not

"commercially relevant" actual confusion.  He did not purport to experience any confusion that

caused him to mistakenly do business with Unleashed by Petco thinking it was UDDC.

UDDC's customers, as Mr. Blumgart has testified, are loyal customers that are largely

acquired through word-of-mouth rather than commercial advertising.  (Blumgart Dep. I 164:15-

17; Scofield Aff. ¶ 9 ("Oliver has a very loyal clientele in the Beverly area.").)  In fact, the

Plaintiff describes its customers as "fiercely loyal."  (*See* Suppl. Mem. in Support of Motion for

a Preliminary Injunction, ECF No. 21, at 2.)  They are not point of sale customers, nor are they

the type to be so confused by a store using the same word in its name that they divert their

business.  In fact, Blumgart testified that he is not aware of any customers he has lost as a result

of Unleashed by Petco's opening.  (Blumgart Dep. II 242:3-7.)  In fact, the only other affidavit

UDDC has produced on this issue is that of Joanne S. Hall, who stated that she entered the

Unleashed by Petco store only to chastise the manager for using "Unleashed" in Beverly.  (Hall

Aff. ¶ 7-8.)  Ms. Hall's reaction proves that no harm to UDDC's goodwill has occurred.

Finally, UDDC's Amended Complaint alleges that Rosemary Weissman, an employee at

a veterinary clinic, experienced confusion because she reported to Mr. Blumgart that a dog in her

office had been injured at UDDC when it had really been injured at Unleashed by Petco, and that

the local animal control officer was similarly mistaken when he followed-up on a report of the

incident.  (Am. Compl. ¶¶ 20-21.)  But UDDC cannot hang a claim of likelihood of confusion on

events that it set in motion itself.  Mr. Blumgart's deposition revealed that when he spoke with

the veterinary clinic (he called inquiring about something else), Ms. Weissman answered the

phone and asked "what happened on Saturday?"  (Blumgart Dep. II 287:19-24.)  Mr. Blumgart

testified that Ms. Weissman said she heard from "so-and-so" that a dog was bitten at a playgroup

at his facility  (*id.* 286:17-288:13) and admitted that he had no idea how many people the story

went through before it got to Ms. Weissman (*id.* at 290:22-291:11).  Ms. Weissman's comments

to Mr. Blumgart suffer from multi-layered hearsay, of unknown degree, and are not admissible.

*Miles v. Great Northern Ins. Co.*, 656 F. Supp. 2d 218, 255 (D. Mass. 2009) ("inadmissible

hearsay cannot be considered on a motion for summary judgment); *Storage Tech. Corp. v.*

*Custom Hardward Eng. & Consulting, Ltd.*, 2006 WL 1766434, at *33 (D. Mass. June 28, 2006)

(rejecting multi-layered hearsay as inadmissible).  Mr. Blumgart himself then called the animal

control officer and reported what he had learned of the incident.  (Blumgart Dep. II 291:12-

293:19.)  So, the fact that the officer stopped by UDDC is not evidence of confusion in the

marketplace based on the Parties' use of their marks, but is only evidence that Mr. Blumgart's

report caused the animal control officer to inquire further.

### 8.      Defendant Adopted "Unleashed by Petco" in Good Faith

The Defendant had no reason to believe that there were any conflicts with the name of its

new concept store, "Unleashed by Petco."   When the Petco Executive Committee recommended

that a new concept store be named "___ by Petco," all that was left was to fill in the blank.

(Seremetis Decl. ¶ 6.)  The word "unleashed" was chosen because it fit the brand concept for

Petco's new, smaller retail store and Petco had already been using the name "Petco Unleashed"

to promote its Chihuahua Race events.  (*Id.* ¶¶ 11, 13; White Decl. ¶ 3.)  After obtaining the

results of a trademark search performed by outside counsel, Petco applied to register the mark, "Unleashed by Petco" because it believed, and continues to believe, that the mark is sufficiently distinguished from other uses of "Unleashed" in the market.  (Little Decl. ¶ 8.)  The Defendant was aware that the Plaintiff had applied for a trademark for "Unleashed," but also knew that the Plaintiff had abandoned that application in the face of an Opposition claiming prior rights. (Blumgart Dep. I Ex. 1.)  All signs pointed to the name "Unleashed by Petco" being free and clear, and certainly not infringing of any rights the Plaintiff was asserting.

The Plaintiff has provided no evidence, other than conclusory allegations, of any intent to copy when Petco adopted its mark.  *See Polaroid*, 657 F.2d at 491 (finding the intent factor to weigh in the defendant's favor when the plaintiff merely claimed that the defendant used its mark "with full knowledge of plaintiffs' mark" without providing evidence of an intent to deceive or to benefit from the plaintiffs' reputation).  In fact, evidence of the Defendant's good faith efforts when selecting the name of its concept store illustrates that it had every intention of avoiding any conflicts with another mark.  In short, Petco acted in good faith.

## II.     PETCO IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON UDDC'S 93A CLAIM

For the same reasons that Petco is entitled to judgment on UDDC's claim of trademark infringement under the Lanham Act, Petco is entitled to judgment as a matter of law on UDDC's 93A claim.  UDDC's claim that Petco violated Mass. Gen. Laws ch. 93A is based on the same allegations as its claim under the Lanham Act—namely, that Petco has engaged in unfair and deceptive trade practices by using the word "Unleashed" in the name of its Unleashed by Petco stores and that its use is likely to cause confusion. (Am. Compl. ¶¶ 25-26.)

The relevant statutory framework, Mass.Gen.L. ch. 93A, sec. 2(a) (1986), states simply that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of

any trade or commerce are hereby declared unlawful." Massachusetts courts have considered acts "unfair or deceptive" if they are "immoral, unethical, oppressive, or unscrupulous." *Black Dog Tavern Co., Inc. v. Hall*, 823 F. Supp. 48, 60 (D. Mass. 1993).

As this Court has consistently found, when a Defendant is within its rights to use an alleged trademark, its actions can hardly be described as "immoral, unethical, oppressive, or unscrupulous." *Id.* ("Having already concluded that defendant was fully within his rights in parodying plaintiff's marks, the court finds that 'even under the most critical view, [his] actions can hardly be described as 'immoral, unethical, oppressive, or unscrupulous.'"); *Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.*, 762 F. Supp. 404, 415 (D. Mass. 1991) (finding no likelihood of success on the merits of plaintiff's 93A claim, "[i]n light of the fact that this court has not found a likelihood of confusion among the potential customers of the parties"); *Pump, Inc. v. Collins Mgmt., Inc.*, 746 F. Supp. 1159, 1173 (D. Mass. 1990) (granting summary judgment of 93A claim when Defendant's band, Aerosmith, "was fully within its rights to use the name 'Pump' for its most recent recording").

Likewise, as Petco is within its rights to use the term "Unleashed," incorporating that term in its new store name does not violate chapter 93A. Accordingly, Petco is entitled to judgment as a matter of law with respect to this claim as well.

## CONCLUSION

For the foregoing reasons, the Defendant Petco Animal Supplies Stores, Inc. respectfully requests that this Court grant its Motion for Summary Judgment.

PETCO ANIMAL SUPPLIES STORES, INC.
By its attorneys,

*/s/ Elizabeth A. Spinney*

Elizabeth A. Spinney (BBO #657848)
Steven M. Cowley (BBO #554534)
Deborah Higashi Dodge (BBO #672838)
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, MA  02199-7613
Tel. 617.239.0100
Fax 617.227.4420
espinney@edwardswildman.com
scowley@edwardswildman.com
ddodge@edwardswildman.com

Dated: October 21, 2011

## CERTIFICATE OF SERVICE

I, Elizabeth A. Spinney, hereby certify that on October 21, 2011 this document was electronically filed using the Court's ECF system, and that a copy was thereby transmitted to Plaintiff's counsel.

*/s/ Elizabeth A. Spinney*
Elizabeth A. Spinney