**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
**UNLEASHED DOGGIE DAY CARE, LLC,**      )
                                        )
              **Plaintiff,**             )
                                        )
       **v.**                            )        **Civil Action No. 10-10742-DJC**
                                        )
**PETCO ANIMAL SUPPLIES STORES, INC.,**  )
                                        )
              **Defendant.**             )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                        December 28, 2011

## I.      Introduction

Plaintiff Unleashed Doggie Day Care, LLC ("UDDC") brings this action against Petco

Animal Supplies Stores, Inc. ("Petco") for trademark infringement under Section 43 of the Lanham

Act, 15 U.S.C. § 1125(a), and unfair business practices under Mass. Gen. L. c. 93A.  UDDC claims

that Petco's use of "Unleashed" in the name of its local store, "Unleashed by Petco" in Beverly

infringes UDDC's alleged rights in the purported mark "Unleashed."  Petco has now moved for

summary judgment on all claims.  For the reasons set forth below, Petco's motion for summary

judgment is GRANTED.

## II.     Burden of Proof and Standard of Review

Summary judgment is appropriate where there is no genuine dispute as to any material fact

and the undisputed facts show that the moving party is entitled to judgment as a matter of law.  FED.

R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears

the burden of showing the district court the basis for its motion and identifying where there exists

1

a lack of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A dispute is "genuine" only if a reasonable jury could find for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 248.  Once this evidence is supplied by the moving party, the nonmovant "must point to 'competent evidence' and 'specific facts' to stave off summary judgment."  <u>Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London</u>, 637 F.3d 53, 56 (1st Cir. 2011) (internal citation omitted); <u>ATC Realty, LLC v. Town of Kingston</u>, 303 F.3d 91, 94 (1st Cir. 2002).

The Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'"  <u>Tropigas de Puerto Rico, Inc.</u>, 637 F.3d at 56 (quoting <u>Rogan v. City of Boston</u>, 267 F.3d 24, 27 (1st Cir. 2001)).  The nonmovant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial."  <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968).  The Court then "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009). "While infringement and unfair competition cases often present factual issues that render summary judgment inappropriate, this is not invariably so." <u>Kazmaier v. Wooten</u>, 761 F.2d 46, 48-49 (1st Cir. 1985).

## III.   Factual Background

Unless otherwise indicated, the following are the undisputed facts.

### A.   UDDC

UDDC is a pet daycare and grooming business, with a small retail store, in Beverly, Massachusetts owned and operated by Oliver Blumgart.  Blumgart began his business as Beverly Petsitters in June 2000, picking up dogs and taking them for hikes in the area.  (First Affidavit of

Oliver Blumgart ("First Blumgart Aff."), D. 6, ¶ 2).  With Beverly Petsitters, Blumgart became known for "unleashed" supervision of dogs; that is, allowing the dogs to roam, free of their leashes, while under his supervision.  (June 24, 2010 Deposition of Blumgart ("Blumgart Dep. I"), 14:2-19, attached as Ex. A to Elizabeth Spinney Declaration ("Spinney Decl.")).

In March 2002, Blumgart opened a sister store, "A Cut Above the Rest," to provide dog grooming and some retail items.  (First Blumgart Aff. ¶ 3).  Blumgart looked into getting a trademark for that name, but after discovering a hair salon already used it, changed the name to "Unleashed – The Shop."  (Blumgart Dep. I, 10:22-12:7).  This arm of the business ultimately settled at its current location at 12 Lothrop Street. (Blumgart Dep. I, 6:5-10:10).

Blumgart eventually moved his residence and UDDC to 8 Trask Street in Beverly, where he operates the daycare facility on the first floor and in the yard outside.  (Blumgart Dep. I, 3:12-4:8). There are no retail products sold and, in fact, no cash register at 8 Trask Street.  (Blumgart Dep. I., 5:23-6:4; September 3, 2011 Deposition of Blumgart ("Blumgart Dep. II") attached as Ex. B to Spinney Decl., 237:14-23).  The 8 Trask Street location offers daycare for dogs and pet sitting services only. (Blumgart Dep. I, 5:23-6:4; Blumgart Dep. II, 237:17-23).  Retail sales from Unleashed - The Shop account for less than 9% of UDDC's business.  (Def. Statement of Facts ¶ 12; Pl. Resp. to Def. Statement of Facts (does not dispute facts set forth in ¶ 12); Blumgart Dep. I., 103:10-125:9, Exs. 6-9; D. 40, Ex. G).  UDDC obtains new business largely through recommendations from existing clients.  (Blumgart Dep. I, 164:15-22).

On June 3, 2003, Blumgart applied to the United States Patent and Trademark Office ("USPTO") to register the mark "Unleashed" for the categories of "Dog Grooming and Boarding Services and supplies and Retail store services in the field of animal and pet supplies."  Blumgart

Dep. I, Ex. 1 (D. 40, Ex. E).  The USPTO deemed his recitation of services unacceptable as indefinite.  Id. at U0075.  In response, Blumgart filed an amendment to his application to narrow the scope of goods or services to dog boarding services.  Id. at U0064, U0070.  The USPTO determined that there was a likelihood of confusion between UDDC's "Unleashed" and a dog/cat daycare called "Unleash Yourself" in Portland, Oregon.  Id. at U0073-74.  Blumgart argued that there was no likelihood of confusion between "Unleashed" and "Unleash Yourself," when the marks as used were considered "as a whole," id. at U0071-72, which succeeded in getting his application published for comment.

On April 4, 2005, Christa Blaskowski, d/b/a "Unleashed, Behavior and Training Services" in Shakopee, Minnesota, filed an opposition to Blumgart's application asserting prior use of the mark for competing dog care services.  (Blumgart Dep. I, Ex. 1 at U0090-93).  Blumgart subsequently abandoned his trademark application.  (Def. Statement of Facts ¶ 5; Little Decl., Ex. A at P00242).  Nonetheless, Blumgart continued to affix the symbol ™ to the word "Unleashed" on UDDC documents, (Blumgart Dep. I, 94:20-95:2; D. 40, Ex. F), despite the fact that he understood he was not free to use "Unleashed" alone as his mark.  (Blumgart Dep. I, 22:4-8; Def. Statement of Facts ¶ 39).  As displayed on its products, advertisements, web page and business cards produced during discovery, UDDC continues to hold itself out as "Unleashed Doggie Day Care, LLC," "Unleashed – The Shop" and "unleasheddoggiedaycare.com."  Id. 3:19-20, 6:7-9, 136:2-8; D. 121-28.  UDDC often displays the name of its business in connection with a paw logo (Second Affidavit of Oliver Blumgart ("Second Blumgart Aff."), D. 115, Exs. 12, 14-16 (D. 125-28); Spinney Decl., Ex. H).

### B.      Unleashed by Petco

Petco operates large retail pet supply stores nationwide.   (Def. Statement of Facts ¶ 1; Seremetis Decl. ¶ 15).  In late 2008, Petco decided to develop a presence in local neighborhoods and created a new concept store called "Unleashed by Petco." (Id.).  These stores are designed to bring Petco's best-selling retail products into more convenient, hometown locations. (Id.).  To date, Petco has opened seven Unleashed by PetCo stores in Massachusetts, including one in Beverly which opened on May 15, 2010. (Seremetis Decl. ¶ 21).  Unleashed by Petco stores in Massachusetts sell pet supplies and do not offer pet sitting or grooming services.  (Little Decl. ¶ 10; Seremetis ¶¶ 22-23).

Petco conducted a full trademark search before applying to register the mark "Unleashed by Petco" with the USPTO.  (Def. Statement of Facts ¶ 5; Little Decl. ¶¶ 3, 6-8, Exs. A, B; Seremetis Decl. ¶ 12).  This search revealed that Blumgart had abandoned his application for the mark "Unleashed."  (Def. Statement of Facts ¶ 5; Little Decl., Ex. A at P00242).  Petco also learned that 132 companies in the pet care products and services market used "Unleashed" in their names.  (Little Decl., Ex. A).  Ultimately, Petco's executive team settled on "Unleashed by Petco" and registered the mark "Unleashed by Petco" with the USPTO.  (Little Decl. ¶ 8; Seremetis Decl. ¶ 13).  The Unleashed by Petco mark depicts the word "unleashed" underlined by a light green collar and an orange leash bearing the words "by Petco" in the corporate Petco font.  (Seremetis Decl. ¶ 18, Ex. E).

## IV.    Procedural History

On April 30, 2010, UDDC filed the instant two-count complaint, alleging trademark infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair business

practices under Mass. Gen. L. c. 93A. (D. 1). UDDC subsequently filed a motion for preliminary injunction to prevent Petco from using the word "Unleashed" in the mark for its local concept store, "Unleashed by Petco." (D. 4). After expedited discovery, extensive briefing and a hearing on August 11, 2010, the Court (O'Toole, J.) denied UDDC's motion for failure to demonstrate a likelihood of success on the merits. Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc., __ F. Supp. 2d ___, 2010 WL 5207599 at *5-9 (D. Mass. Dec. 16, 2010) ("Unleashed I").

The parties then conducted additional discovery and UDDC amended its complaint on May 20, 2011, which added additional factual allegations but did not add any new counts against Petco. (D. 82). The Court heard oral argument on the motion on December 1, 2011.

## V.   Discussion

### A.   Count I:  Violation of Section 43(a) of the Lanham Act

As acknowledged by this Court (O'Toole, J.) in Unleashed I, "Unleashed" is not a registered mark. 2010 WL 5207599 at *2; Blumgart Dep. I, 98:21-99:13. To establish a claim for infringement of an unregistered mark under section 43(a) of the Lanham Act, UDDC "must demonstrate both that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006). Petco argues that UDDC has failed to make either showing.

#### 1.   Whether "Unleashed" Merits Trademark Protection

##### a.   The Protectability of Unregistered Marks

Whether a mark is eligible for trademark protection, depends upon whether it is "capable of functioning as a source-identifier of goods." Boston Duck Tours, LP v. Super Duck Tours, LLC,

531 F.3d 1, 12 (1st Cir. 2008) (citing <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 769 (1992)). This quality is referred to as "distinctiveness." <u>Boston Duck Tours</u>, 531 F.3d at 12  n. 9. Marks are placed into five categories along a spectrum of distinctiveness: "(1) generic (least distinctive), (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful (most distinctive)." <u>Id.</u> at 12 (citing <u>Two Pesos</u>, 505 U.S. at 768) (further citation omitted).   Although where a mark falls along this spectrum presents an issue of fact, <u>Boston Beer Co. v. Slesar Boston Bros. Brewing Co.</u>, 9 F.3d 175, 180 (1st Cir. 1993), it may be decided on summary judgment. <u>See, e.g.</u>, <u>Colt Def. LCC v. Bushmaster Firearms, Inc.</u>, 486 F.3d 701, 710 (1st Cir. 2007) (affirming summary judgment in a trademark infringement case where the district court found that the term, "M4," used in conjunction with defendant's sale of certain firearms, was generic and thus not entitled to trademark protection).

A generic term, such as car or pizza, describes the class, or "'genus' of goods" rather than identifying the specific source and are thus "incapable of becoming trademarks, at least in connection with the products they designate." <u>Boston Duck Tours</u>, 531 F.3d at 13-14 (citing cases). Marks classified as suggestive, arbitrary or fanciful "are all considered inherently distinctive because they have the capacity to serve a source-identifying function upon first use." <u>Id.</u> at 12-13 & n. 9-12. A mark is suggestive if it requires "imagination, thought and perception to reach a conclusion as to the nature of the goods."   <u>Id.</u> at 12 n. 10 (identifying COPPERTONE for suntan lotion as an example of a suggestive mark "because it hints at the nature" of the product).  A mark is arbitrary if it "consists of a word or symbol that is in common usage in the language, but is arbitrarily applied to the goods or services in question in such a way that it is not descriptive or suggestive." <u>Id.</u> at 12 n. 11 (identifying APPLE as an example of an arbitrary mark "because its common definition is a

fruit, which is unrelated to its use in connection with computers").  "A fanciful mark is a word that is coined for the express purpose of functioning as a trademark.  It could also be any obscure or archaic term not familiar to buyers."  Id. at 12 n. 12 (identifying the mark EXXON as fanciful "because it was invented or designed solely to designate petroleum and other related goods" and "has no other meaning").

On the other hand, a descriptive mark "convey[s] an immediate idea of the ingredients, qualities or characteristics of the goods [or services] to which they are attached."  Id. at 13 (citation omitted).  "Because descriptive marks are not inherently capable of serving as source-identifiers . . . the owner [must] provide[ ] sufficient evidence to establish that the public associates the term or phrase not only with a specific feature or quality, but also with a single commercial source."  Id. (citing 2 THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 15:1 (4th ed. 2008)).  When the public associates the descriptive term with a single commercial source, that term is said to have "acquired distinctiveness or secondary meaning and therefore functions as a trademark."  Boston Duck Tours, 531 F.3d at 13 (citing 15 U.S.C. § 1052(f) (internal quotations omitted)).

Accordingly, "[a] mark is . . . considered distinctive (and, thus, eligible for trademark protection) if it either is inherently distinctive or exhibits acquired distinctiveness gained through secondary meaning."  Borinquen, 443 F.3d at 116-17 (citing Two Pesos, 505 U.S. at 769).

### b.     The Purported Mark "Unleashed" is Descriptive

Petco contends that the term "Unleashed" falls into the descriptive category and is not inherently distinctive.  In response, UDDC merely responds that "Unleashed has established distinctiveness in its mark in the relevant marketplace" and that whether "Unleashed" is distinctive

is disputed.  Pl. Opp. at 4.  UDDC's response is inadequate.  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).  It is the litigant who has the obligation "to spell out its arguments squarely and distinctly."  Paterson-Leitch Co. v. Mass. Municipal Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988).  UDDC also fails to direct the court to evidence to support its assertion, which a party must do when opposing a motion for summary judgment.  See FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of the record including . . . affidavits or declarations").  UDDC states only that it has "a well established reputation" and that it "has won awards."  Pl. Opp. at 4.  Even assuming this is true, such facts are insufficient to comprise the basis of a claim that its mark is distinctive or to defeat Petco's argument that there is no genuine dispute of material fact as to this issue.  Nonetheless, the Court has combed through UDDC's affidavits to determine what evidence, if any, supports that its purported mark "Unleashed" merits trademark protection.

The Court agrees with Petco that the term "Unleashed" is descriptive.  As this Court (O'Toole, J.) found in connection with UDDC's motion for preliminary injunction in Unleashed I, "Unleashed" describes the nature of the goods and services - i.e., the way UDDC provides services for dogs - allowing dogs to run free without a leash.  2010 WL 5207599, at *3-4.  To reach that conclusion requires no degree of imagination. Unleashed has presented no contrary evidence as to the generally understood meaning of "unleashed" in this context.  Blumgart's affidavit (D. 115) merely describes the instances of UDDC's use of the name of its shop and daycare facility (Unleashed - The Shop and Unleashed Doggie Day Care, respectively).  The record shows that Blumgart himself determined "Unleashed" to be describing UDDC's services and products.

9

Blumgart testified that "Unleashed" was meant to be "a description of what we were doing and what we felt described the services and products we offered."  (Blumgart Dep. I, 13:4-9).  Where a "proponent of trademark status himself uses the mark as a descriptive term, this is strong evidence of descriptiveness."  Unleashed I, 2010 WL 5207599, at *4 (citing 2 MCCARTHY, supra, § 11:69 and Devcon Corp. v. Woodhill Chem. Sales Corp., 455 F.2d 830, 832 (1st Cir. 1972) (finding the president's testimony that "he called his product '5 Minute' epoxy because 'we're trying to give the customer an idea that it sets up in about five minutes' time'" relevant when determining whether the mark was descriptive)).

        In determining whether a particular mark is descriptive, the Court should also consider "the extent to which it has been used in trademarks by others in the same field."  Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F. Supp. 994, 1008 (D. Mass. 1988).  "Extensive use of a mark by third parties [indicates] that the mark is merely descriptive of a given class of product [or services]."  Unleashed I, 2010 WL 5207599, at *3 (quoting Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1118 (9th Cir. 2010)); see Labrador Software, Inc. v. Lyvos, Inc., 32 F. Supp. 2d 31, 33 (D. Mass. 1999) (holding computer software company's trademarks, "Labrador," "E-Retriever," "Labrador Retriever," "Labrador Software," and "Get Engine" used with a Labrador dog image, were descriptive in light of many similar marks in the industry).  Here, the evidence shows that the mark "Unleashed" UDDC seeks to protect is regularly used by companies in the pet care industry when describing the nature of their services.  Two companies, "Unleash Yourself" in Portland, Oregon and "Unleashed, Behavior and Training Services" in Shakopee, Minnesota, that Blumgart encountered in the proceedings related to his trademark application before the USPTO, both use the term to describe their pet care services.  The terms "Doggie Day Care" in "Unleashed Doggie Day

Care" and "The Shop" in "Unleashed - The Shop" simply add further descriptive terms concerning UDDC's two facilities where pet products and services are provided. During its own trademark search, Petco uncovered 132 companies in the pet care products and services market using "Unleashed" in their names. See Little Decl., Ex. A. Through a common law search, Petco also discovered 21 companies in the same industry using "Unleashed." See id., Ex. B. UDDC offers no evidence to the contrary to support its conclusory assertion that the mark "Unleashed" or the composite marks ("Unleashed Doggie Day Care" and "Unleashed – The Shop") are distinctive. Accordingly, the Court finds that no reasonable jury could conclude that "Unleashed" is inherently distinctive.

### c.    "Unleashed" Has Not Acquired Secondary Meaning

Because UDDC's unregistered mark is descriptive, the only way for it to attain distinctive status (thereby warranting trademark protection) is by showing that it has acquired secondary meaning. Borinquen, 443 F. 3d at 116. UDDC bears the burden of proving that its descriptive mark has acquired secondary meaning. Boston Beer Co., 9 F.3d at 181. To prove secondary meaning, UDDC must demonstrate that a substantial portion of the consuming public attributes "Unleashed" specifically with UDDC's business. See id. at 182. "[I]n the minds of the public, the primary significance of [the mark] [must be] to identify the source of the product rather than the product itself.'" Two Pesos, 505 U.S. at 766 (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n. 11 (1982)). Proof of secondary meaning "entails vigorous evidentiary requirements." Boston Beer Co., 9 F.3d at 181.

"The only direct evidence probative of secondary meaning is customer surveys and testimony by individual consumers." Yankee Candle Co. v. Bridgewater Candle Co., Inc., 259 F.3d

25, 43 (1st Cir. 2001).  Although proof that every member of the consuming public associates the mark with the plaintiff is not required, the plaintiff must prove that "a significant quantity of the consuming public understand a name as referring exclusively to the appropriate party."  President & Trs. of Colby Coll. v. Colby Coll.-N.H., 508 F.2d 804, 807 (1st Cir. 1975).  Circumstantial evidence may also be sufficient to demonstrate secondary meaning, including "the length and manner of the use of the trade dress, the nature and extent of advertising and promotion of the trade dress, and the efforts made to promote a conscious connection by the public between the trade dress and the product's source."  Yankee Candle, 259 F.3d at 43.

As to secondary meaning, UDDC has not made a sufficient showing of competent evidence and specific facts to "stave off summary judgment."  Tropigas de Puerto Rico, Inc., 637 F.3d at 56.  UDDC does not offer a customer survey.  Instead, UDDC presents Blumgart's affidavit and eighteen affidavits from existing customers in support of its position that the consuming public in the pet care market associates the term "Unleashed" with UDDC exclusively.  (D. 97-114).[1]  Blumgart's affidavit says nothing about the secondary meaning requirement and does not speak of any instance of a consumer associating "Unleashed" with UDDC only.  The eighteen affidavits of existing UDDC customers show that Blumgart's customers are loyal to him, that they are happy with his services and that many are equally unhappy that Unleashed by Petco has opened in Beverly.  See D. 97- 114.

---

[1]To the extent that any of these affidavits (including portions of the five affidavits (D. 99, 103, 104, 109, 110) that Petco has moved to strike), offer legal conclusions or opinion testimony not based on personal knowledge, see FED. R. CIV. P. 56(e); Connell v. Bank of Boston, 924 F.2d 1169, 1178 (1st Cir. 1991), the Court has not considered such inadmissible portions in reaching its decision.  Petco has also moved to strike the affidavit of Maria Atherton (D. 98) in its entirety.  Because the motion is unopposed and counsel for Unleashed conceded the affidavit be stricken at oral argument, Tr. 44: 10-15, the Court grants Petco's motion to strike the Atherton affidavit and has not considered it in its resolution of Petco's motion for summary judgment.

The affidavits establish that UDDC's customers know UDDC (Blumgart, specifically) for its quality pet care services.  What the affidavits do not demonstrate is that a significant portion of the consuming public connects "Unleashed" exclusively with UDDC, which is the critical inquiry. Regardless of whether the consuming public is limited to pet owners in Beverly or extends to surrounding towns, UDDC has failed to present evidence that a significant portion of that population consciously connects the term "Unleashed" with UDDC.

Indeed, the exhibits to Blumgart's affidavit show that UDDC does not consistently use the mark "Unleashed" alone - the term in which he claims an exclusive property right.   Like Petco, UDDC uses a composite mark to distinguish itself from other users of "Unleashed." See, e.g., Second Blumgart Aff., Exs. 8 & 10 (signs for "Unleashed - The Shop"); Ex 9 (brochure displaying the name "Unleashed" with "Doggie Day Care" underneath); Ex. 12 (advertisements and letter addressed to "Unleashed - The Shop"); Ex. 14 (jacket emblem bearing "Unleashed Doggie Daycare, LLC" with the website www.unleashthedog.com).  Where Blumgart used the term "Unleashed," (Exs. 4 & 5), he used it as a nickname for "Beverly Petsitters" at the time he was preparing to change the business name to "Unleashed Doggie Day Care."   Blumgart also used the term "Unleashed" while improperly claiming that he owned a registered trademark for "Unleashed." See Second Blumgart Aff., Ex. 9 (brochure noting on the front cover "Unleashed ™ "); Ex. 16 (cover of bag of treats displaying "Unleashed ™ - Ultimate Cookie").  In light of the exhibits submitted with Blumgart's affidavit, it cannot be said that UDDC makes a consistent, sustained use of "Unleashed" alone as a mark.  See Blumgart Dep I, 81:21-82:9.

UDDC's sporadic advertising and promotion of "Unleashed" used in conjunction with other descriptive composite marks also compels the conclusion that no reasonably jury could find that

UDDC could demonstrate secondary meaning of "Unleashed" alone on the present record.   In Unleashed I, this Court (O'Toole, J.) found UDDC's advertising efforts insufficient to establish secondary meaning.   Unleashed I, 2010 WL 5207599, at *5.   Although the Court made that finding at a preliminary stage of this litigation, since that ruling on UDDC's motion for injunctive relief, the only additional evidence UDDC has submitted of its advertising and promotional activities involves UDDC's purchase of one print ad and telephone book listing and a reporting of advertising expenditures of $2,692.55 from June 2010 to May 2011.   (Blumgart Dep. II, 224:20-226:24, Ex. 100 (Spinney Decl., Ex. E)).   From 2000 to 2010, UDDC spent a total of $56,851.24 on advertising. (Blumgart Dep. I, Ex. 11).   This comes to no more than approximately $5,500 on average per year of advertising expenditures.   See Blumgart Dep., I, Ex. 11 (D. 40, Ex. D); Def. Statement of Facts ¶ 22; Pl. Resp. to Def. Statement of Facts ¶ 22 (adding facts regarding UDDC's advertisement but does not dispute the facts set forth in Def. Statement of Facts ¶ 22).   Although UDDC is a small business and has a limited budget to allocate to promotional and advertising efforts, UDDC claims a legally protected property right in "Unleashed."   Yet, the heart of UDDC's advertising is by word-of-mouth, i.e., largely through recommendations and referrals from existing customers and the growth of its business is based largely on this form of advertising.   Unleashed I, 2010 WL 5207599, at *5; Blumgart Dep. I, 164:15-22.   UDDC has submitted no evidence that it actively engages in consistent advertising solely as "Unleashed" targeting pet owners beyond UDDC's current customer base.   Thus, it would be unreasonable for a jury to conclude that UDDC's use of "Unleashed" alone as a mark has become sufficiently pervasive in the relevant market that the consuming public has come to associate that mark solely with UDDC's business.

In light of the foregoing, no reasonable jury could conclude on the present record that UDDC's use of "Unleashed" has acquired secondary meaning.  Without inherent distinctiveness or secondary meaning, "Unleashed" as it is used by UDDC is not eligible for trademark protection. See Boston Duck Tours, 531 F.3d at 13 n. 9 (noting that "[w]ithout achieving distinctiveness, either inherently or through the acquisition of secondary meaning, a designation does not have the legal status of a 'trademark'" (quoting 2 MCCARTHY, supra, § 11:2)).

### 2.      "Unleashed by Petco" is Not Likely to Cause Consumer Confusion

Although it is unnecessary for the Court to address the likelihood of confusion in light of the Court's finding that "Unleashed" is not eligible for trademark protection, for the sake of completeness, the Court will address whether "Unleashed by Petco" is likely to result in consumer confusion.

Trademark law is intended to "prevent the use of the same or similar marks in a way that confuses the public about the actual source of the goods or service."  Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 9 (1st Cir. 1996).  "Confusion about [the] source exists when a buyer is likely to purchase one product in the belief she was buying another and is thus potentially preventing from obtaining the product she actually wants."  Id.  "The determination as to whether a likelihood of confusion exists is a question of fact," Boston Duck Tours, 531 F.3d at 15; Purolator, Inc. v. EFRA Distribs., Inc., 687 F.2d 554, 559 (1st Cir. 1982).  Likely confusion requires more than a possibility of confusion; the alleged trademark infringement must create "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." Boston Duck Tours, 531 F.3d at 12 (quoting Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996)).  To evaluate the

likelihood of confusion, the Court considers eight factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) defendant's intent in adopting the mark; and (8) the strength of plaintiff's mark. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). These factors are not exhaustive and no single factor is determinative. Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 15 (1st Cir. 2004); Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987); Pignons, 657 F.2d at 487. All factors "must be evaluated in context, [and] any meaningful inquiry into the likelihood of confusion necessarily must replicate the circumstances in which the ordinary consumer actually confronts (or probably will confront) the conflicting mark." Winship Green Ctr., 103 F.3d at 201. Despite UDDC's failure to address seven of these eight factors in its opposition, Pl. Opp. at 4, the Court examines these factors in light of the circumstances of this case and the record before it.

### a.    Similarity of the Marks

When examining the similarity of two marks, the Court should consider "the total effect of the designation, rather than a comparison of individual features." Pignons, 657 F.2d at 487; Winship Green Ctr., 103 F.3d at 203 ("similarity is determined on the basis of the designation's total effect"). Specifically, the Court looks to the total effect, examining the similarity in "sound, appearance, and meaning." Wheeler, 814 F.2d at 817. When evaluating marks containing words, the type of letters used (script or block), the color and composition of the background upon which they appear, and the spelling of the words, are important considerations. Coca-Cola Co. v. Snow Crest Beverages, Inc., 162 F.2d 280, 284 (1st Cir. 1947).

In the instant case, the total effect of the Petco's mark diminishes the possibility that its mark may be confused with that of UDDC.  UDDC has used the mark "Unleashed" within larger composite marks, with other descriptive terms ("Unleashed – The Shop" and "Unleashed Doggie Day Care"), and with a paw print logo.  The mark is typically in black and white.  UDDC admits that sometimes the words are in classic script font with thin lettering, while other times it is in all uppercase bold letters.  See Def. Statement of Facts ¶ 21; Pl. Resp. to Def. Statement of Facts (does not dispute facts set forth in ¶ 21); see also D. 39, Ex. D (collection of UDDC materials).   In contrast, Petco uses "unleashed" together with "by Petco."   It is set in a brown rectangle with "unleashed by Petco" in thick modern white font.  Seremetis Decl., Ex. E (unleashed by petco logo designs).  The word "unleashed" begins with a lowercase letter.  Id.  The graphic design shows a light green collar and orange leash underlining the lettering.  Id.  The dissimilarity of the marks in font, color, design and general appearance makes consumer confusion unlikely.  See Bear Republic Brewing Co. v. Central City Brewing Co., 716 F. Supp. 2d 134, 146 (D. Mass. 2010) (finding that the terms "Red Racer" and "Red Rocket" were not likely to be confused just because they both used the term "Red" when the overall impression of each mark was "quite different"); Little Ceaser Enter., Inc. v. Pizza Caesar, Inc., 834 F.2d 568, 571 (6th Cir. 1987) (holding differences between "Little Caesar" and "Pizza Caesar USA" are clear where there are differences in sound, appearance and number of syllables).

This is especially true here where Petco uses the term "unleashed" in conjunction with "by Petco."  The First Circuit has explained that "under certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer."  Pignons, 657 F.2d at 487 (collecting cases).  A composite mark is considered

17

as a whole and not based upon any one prominent feature.  Estate of Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 545-46 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail").  Petco is a nationally recognized provider of pet care products.  "Unleashed by Petco" on its face indicates the Petco brand, not UDDC as the source.   The "prominent presence of well known trade names goes far toward countering any suggestion of consumer confusion."  Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1046 (2d Cir. 1992).  By using "unleashed" with "by Petco" in its mark, the likelihood of confusion with other uses of "unleashed" in the pet services field is thus significantly diminished, if not eliminated.  See Tyco Healthcare Grp. LP v. Kimberly-Clark Corp., 463 F. Supp. 2d 127, 135 (D. Mass. 2006) (holding that the use of the marks "FLEXI-WINGS" and "Comfort Flex wings" did not suggest a likelihood of confusion because consumers were not likely to confuse the brands).

Blumgart raised a similar point concerning his purported mark "Unleashed" during his trademark application process, arguing that there was no likelihood of confusion between "Unleashed" and "Unleash Yourself," (Blumgart Dep. I, Ex. 1 (D. 40, Ex. E) at U0071), when the marks as used were considered "as a whole."  Id.  Although Blumgart now argues the opposite - that likelihood of confusion exists here merely because Petco uses the word "Unleashed" in the name of its store, regardless of consideration of the mark "as a whole" - after Blumgart abandoned his trademark application for "Unleashed," he conceded he had no exclusive property right in "Unleashed" alone and added descriptive terms to  "Unleashed" to create the names, "Unleashed Doggie Day Care" and "Unleashed - The Shop," to identify the two arms of his business and distinguish them from "Unleashed."

Accordingly, because the dissimilarity of the marks indicates that consumer confusion is unlikely, this factor weighs heavily in Petco's favor.

### b. Similarity of the Goods

UDDC and Petco are not similar businesses.  UDDC offers day care and grooming services and does not sell pet care products; Unleashed by Petco is solely a retail store.   Unleashed - The Shop, like Unleashed by Petco, sells food, treats and accessories.  However, Unleashed - The Shop has offered 406 products from 2003-2011, (Blumgart Dep. I, Ex. 9 (D. 40, Ex. G); Spinney Decl., Ex. G) and Unleashed by Petco's Beverly store currently offers 5,270 different products.  (Seremetis Decl., Ex. F).  Unleashed by Petco offers a vast range of different products and more choices within each product category.   Unleashed-The Shop's products are selective, higher-end products.  (Blumgart Dep. I, 171:7-17).  UDDC explains that Unleashed-The Shop does not offer the same full range of products as Unleashed by Petco does because many of the latter's products are of inferior quality.  (Blumgart Dep. I, 170:20-171:1 (stating that "a lot of [the pet products are] rubbish")).

Unleashed by Petco and Unleashed-The Shop do have some products in common such as nutritious, natural pet products, (Blumgart Dep. I, Ex. 9; Seremetis Decl., Ex. F), but this is a minor overlap when compared to the overall differences between the volume and types of products offered and the fact that the retail sales of Unleashed  - the Shop account for less than 9% of UDDC's revenue.  (Def. Statement of Facts ¶ 12; Pl. Resp. to Def. Statement of Facts (does not dispute facts set forth in ¶ 12); Blumgart Dep. I., 103:10-125:9, Exs. 6-9).  Thus, the similarity of goods factor tips in favor of Petco.

### c. Relationship Between the Parties' Channels of Trade, Advertising Practices and Prospective Purchasers

The next three factors—the relationship between the parties' channels of trade, the juxtaposition of their advertising practices and the classes of their prospective purchasers—are generally considered together in this Circuit.  See, e.g., Pignons, 657 F.2d at 488; Beacon Mut. Ins. Co., 376 F.3d at 19.  Petco concedes that both its store and UDDC target the same broad class of prospective purchasers - i.e., pet owners in Beverly and Essex County.  They do so, however, through different channels of trade.  UDDC's principal channel of trade is pet care services including both daycare and grooming.  Blumgart personally cares for his clients' dogs and carefully selects clients for whom he provides any of his services.  (Blumgart Dep. I, 169:11-170:19).  The day care facility has neither shelves displaying products for purchase nor a cash register.  (Blumgart Dep. I, 5:23-6:4).  UDDC sells its pet care products primarily to preexisting customers of its day care and grooming services.  (Def. Statement of Facts ¶ 13; Pl. Resp. to Def. Statement of Facts ¶ 13 (noting that "of 669 distinctly identified customers, 660 of 669, more than 98% are repeat, loyal customers"); Declaration of Muriel Randolph ("Randolph Decl.") ¶ 16 (culling UDDC's sales records to reveal that 660 of 669 retail customers between 2002 and 2009 were existing clients)).  In contrast, Petco engages in retail sales only and offers thousands of pet care products at its Beverly store.  It does not currently provide any day care or grooming services for dogs.

Petco's and UDDC's advertising are also different.  Even though both parties use social media, print and online advertising to some extent, UDDC's principal method of advertising is not proactive marketing, but rather word-of-mouth recommendations by clients and professionals in related trades such as veterinarians.  (Blumgart Dep. I, 164:3-18).  In addition to telephone book listings or ads, UDDC purchased local advertisements in or about 2005 (Blumgart Dep. I, 161:11-24), and 2011 (Blumgart Dep. II, 225: 10-24) and sent a mailing to potential customers in or about

2000 and 2006.  (Blumgart Dep. I, 162:10-163:20; Def. Statement of Facts ¶ 19; Pl. Resp. to

Statement of Facts (does not dispute facts set forth in ¶ 19)).  Such sporadic advertisement, beyond

word-of-mouth recommendations which serve as UDDC's primary advertisement vehicle, stands

in stark contrast to the advertisement scheme employed by Petco.  Petco's principal advertising is

its national presence and on-the-ground marketing campaigns directed by Petco's corporate

marketing department which include local and regional radio and print advertisements, coupon

flyers, door hangers, email newsletters and billboard advertisements.  (Seremetis Decl. ¶¶ 23-28, Ex.

H).

        Thus, although Petco and UDDC target the same class of purchasers (dog and pet owners),

they do so through different channels of trade and advertising practices.

### d.        Evidence of Actual Confusion

        While "proof of actual confusion is not essential to finding likelihood of confusion,"

Borinquen, 443 F.3d at 120, evidence of actual confusion is often "considered the most persuasive

evidence of likelihood of confusion because past confusion is frequently a strong indicator of future

confusion."  Beacon Mut. Ins. Co., 376 F.3d at 18.  Actual confusion must be "commercially

relevant."  Id. at 15.  This means that the actual confusion must be capable of inflicting "commercial

injury in the form of . . . diversion of sales, damage to goodwill or loss of control over reputation

on the trademark holder."  Id. (citation and internal quotation marks omitted).  UDDC must at least

provide some evidence that the "confusion presents a significant risk to the sales or goodwill of the

trademark owner."  Id.

        On the present record, UDDC has not shown it has been injured in the form of a diversion

of sales or that it has lost customers because of any consumer confusion.  In his deposition, Blumgart

was unable to identify any customer he has lost to Unleashed by Petco.  (Blumgart Dep. II, 242:3-7).  The affidavits of UDDC's existing customers submitted by UDDC do not demonstrate that they diverted their business to Petco from UDDC because of any confusion.  Nor do the affidavits show that UDDC has suffered damage to its goodwill or a loss of control over its reputation due to Unleashed by Petco's store in Beverly.  On the contrary, some of the affiants state that they have not purchased products at Unleashed by Petco in Beverly.  <u>See, e.g.</u>, D. 105 at ¶ 4 (Affidavit of Laura Bates); D. 107 at ¶ 4 (Affidavit of Carol A. Cyr).  Some have not shopped there because they are "unimpressed" with Petco stores and believe Petco to be "a mediocre chain," D. 100 at ¶ 4 (Affidavit of Susan Nardone) or because they find Unleashed by Petco's pet food to be of inferior quality, D. 111 at ¶ 11 (Affidavit of Mary Alice Maloney).   Several affiants have attested that they refuse to purchase pet care products at Unleashed by Petco, and in one case, at any other Petco store, out of loyalty to Blumgart.  <u>See, e.g.</u>, D. 99 at ¶ 4 (Affidavit of Mary N. Peart); D. 100 at ¶ 4 (Affidavit of Susan Nardone); D. 101 at ¶ 4 (Affidavit of Patricia R. Colhoun); D. 102 at ¶ 4 (Affidavit of Sean Bracken); D. 109 at ¶ 4 (Affidavit of Jill Twomey).[2]

Two UDDC affiants who entered Unleashed by Petco's Beverly store stated they did so only "out of curiosity" and did not purchase anything.  D. 101 at ¶ 4 (Affidavit of Patricia R. Colhoun) (noting that she "walked through" the store "out of curiosity" but "did not think the merchandise was anything special" she would want to purchase); D. 102 at ¶ 4 (Affidavit of Sean Bracken) (stating that he stopped by the store "out of curiosity" but "would not purchase any goods or services from

---

[2] <u>See also</u> D. 108 at ¶ 4 (Affidavit of Gayle Vyn) ("I have not, and will not, shop at the Unleashed by Petco store until the Unleashed [by Petco] sign is removed"); D. 110 at ¶ 4 (Affidavit of Jennifer McGrath) ("I have not and will not purchase goods from Unleashed by Petco").

either the Unleashed by Petco store or any Petco store in general").

Of those affiants who purchased items at Unleashed by Petco's Beverly store, they did so only after learning that it was a Petco store. None of UDDC's customers who purchased items from Unleashed by Petco in Beverly did so because they were confused about where they were shopping. See, e.g., D. 112 at ¶ 4 (Affidavit of Alexandra Jackson) (noting that she saw the Unleashed by Petco store when it first opened and that she purchased "dog treats, food and clothes" from the store); D. 113 at 3-4 (Affidavit of Barbara Deeley) (stating that she first learned of Unleashed by Petco when they opened their store in Beverly and that she purchased food there). Two of UDDC's customers purchased items at Unleashed by Petco's Beverly store because it was in a convenient location. See D. 104 at ¶ 5 (Affidavit of Lori Lutton); D. 106 at ¶ 4 (Affidavit of Kay McDonald).

Although some affiants stated that initially, they thought Unleashed by Petco was associated with UDDC when it first opened, see, e.g., D. 106 at ¶ 4; D. 102 ¶ 4, this is the type of "temporary confusion" that Courts have rejected because such evidence is not commercially relevant. See, e.g., Riverbank, Inc. v. River Bank, 625 F. Supp. 2d 65, 74 (D. Mass. 2009) (rejecting evidence that the Plaintiff was "regularly contacted by persons who were actually seeking the [Defendant]" and finding that Plaintiff failed to offer any evidence of a mistaken purchase or other commercially relevant confusion); Astra Pharm. Prods. Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1207 (1st Cir. 1983) (rejecting evidence that customers mistakenly associated Astra salesmen with the defendant's product, which displays the acronym "Astra," without evidence that such temporary confusion influenced any buying decisions). To be commercially relevant, UDDC would need to show that the confusion influenced a purchasing decision or injured UDDC's reputation or goodwill. See id. UDDC has failed to make that showing here.

First, UDDC is primarily a service-based business offering dog grooming and day care services for its customers, whereas Unleashed by Petco does not advertise itself as offering and does not offer those services.  Unleashed by Petco is a retail store only.  There is, therefore, no risk that customers would or could purchase pet care services at Unleashed by Petco thinking it was UDDC because Petco simply does not offer them.  Second, none of UDDC's affiants claim that they mistakenly purchased a product at Unleashed by Petco believing they were purchasing a product at UDDC's Unleashed - The Shop.  Even accepting UDDC's assertion that it need not show a consumer actually purchased a product at Unleashed by Petco thinking she was doing so at Unleashed - The Shop, UDDC must show at least that the confusion was capable of harming UDDC commercially - i.e., diversion of sales, damage to goodwill or loss of control over its reputation. Beacon Mut. Ins. Co., 376 F.3d at 15.  UDDC simply presents no evidence that this is the case.

The record shows that UDDC's customers were well aware that Petco had opened Unleashed by Petco in Beverly and reacted strongly to its opening there.  Some reacted with anger, D. 108 at ¶ 4, frustration, D. 107 at ¶ 4, shock, D. 111 at ¶ 8, or "thought that it was terrible,"  D. 109 at ¶ 4. The affidavits offered by UDDC do not show any commercially relevant confusion.  Of those who purchased products from Unleashed by Petco, the affidavits demonstrate that these customers were not confused:  they knew that Unleashed by Petco was not UDDC's Unleashed - The Shop.  See e.g., Astra, 718 F.2d at 1207 (finding no actual confusion absent evidence "that anyone ever bought a Beckman analyzer thinking it came from Astra, or that anyone ever bought Astra products believing that they came from Beckman"); Bear Republic Brewing Co., 716 F. Supp. 2d at 149 (finding the evidence did not demonstrate actual confusion where the plaintiff did not allege "that any of these occurrences resulted in a loss of sales or customers" and explaining that loss of goodwill includes

proof that consumer reviewed or recommended one product thinking it was the other); Riverbank, 625 F. Supp. 2d at 74 (granting summary judgment where the record evidence did not support a finding that the alleged confusion was commercially relevant since the plaintiff did not produce evidence that the alleged confusion resulted in a mistaken purchase by any consumers or loss of goodwill or damage to the plaintiff's reputation).

UDDC claims it "will show that [Petco] is simply wrong" that "Blumgart could not name one customer that he lost to Unleashed, there have been no losses."  Pl. Opp. at 4.  However, to survive summary judgment, UDDC must do more than promise to present new evidence to prove its claims at trial.  See Griggs-Ryan, 904 F.2d at 115 (noting that "[n]either wishful thinking nor mere promise[s] to produce admissible evidence at trial nor conclusory responses unsupported by evidence will serve to defeat a properly focused Rule 56 motion") (internal citations omitted). UDDC must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists]," First Nat. Bank of Ariz., 391 U.S. at 288-89, which it has failed to do.[3]

### e.      Petco's Intent in Adopting the Mark

---

[3]UDDC relies upon the recounting of one instance of alleged confusion by a veterinary clinic employee concerning a dog she thought was injured at UDDC's facility but was actually injured at "Unleashed by Petco." (Am. Compl. ¶¶ 18-21).  At his deposition, Blumgart testified that a veterinary clinic employee told him that she heard from "so-and-so" that her dog was bitten at a playgroup at his facility.  (Blumgart Dep. II, 286:17-288:13).  Blumgart called the local animal control officer and reported what he had learned of the incident. (Blumgart Dep. II, 291:12-293:19).  Blumgart further testified that he had "no idea" how many people the story went through before it reached the employee.  (Blumgart Dep. II, 290:22-291:11).  Even viewing this evidence in the light most favorable to UDDC, it cannot be said that this single incident amounts to a showing of actual confusion particularly where there has been no showing that it resulted in a diversion of sales, damage to goodwill or posed a significant risk of same. Moreover, Blumgart's recounting of statements made by the veterinary clinic employee is hearsay, otherwise inadmissible at trial, that cannot defeat Petco's showing on summary judgment.  See, e.g., Davila v. Corporación De P.R. Para La Difusión Publica, 498 F.3d 9, 17 (1st Cir.2007).

UDDC argues that "Petco knew of Unleashed's prior and continuing use of the mark 'UNLEASHED' prior to adopting the mark," Pl. Opp. at 3, and that although "Petco asserts that it had clean hands and took every reasonable step to 'clear' the Unleashed by Petco name[,] [UDDC] has shown that this is not correct." Pl. Opp. at 4. UDDC has presented no evidence in the record to support this conclusory allegation. Conclusory allegations and unsupported speculation are insufficient to establish a genuine dispute of fact. Tropigas de Puerto Rico, 637 F.3d at 56 (citation omitted). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Nonetheless, to the extent UDDC argues, without evidentiary support, that Petco intended to copy UDDC or acted with unclean hands when Petco adopted its mark, the record shows that this is not true. The evidence submitted by Petco shows that prior to selecting the name "Unleashed by Petco" for its new concept store and registering that mark, Petco conducted a comprehensive trademark search. That search revealed that while Blumgart had applied for a trademark for "Unleashed," he abandoned his application. (Def. Statement of Facts ¶ 5; Little Decl., Ex. A at P00242). It would be unreasonable to conclude that in light of its trademark search and Blumgart's abandonment of his trademark application, that Petco had unclean hands or otherwise acted in bad faith when it adopted the mark. Even "knowledge of the existence of a competitor's mark is insufficient to prove bad faith." NEC Elecs., Inc. v. New Eng. Cir. Sales, Inc., 722 F. Supp. 861, 866 (D. Mass. 1989). Bad faith requires proof that one party intended to capitalize on the holder's reputation or goodwill and confusion between the marks. See id. Such proof is absent from the present record. The factor of Petco's intent in adopting the mark, therefore, also weighs in Petco's

favor.  See Pignon, 657 F.2d at 491 (finding the defendant's intent in adopting the mark weighed

in defendant's favor where the plaintiff claimed that the defendant used its mark "with full

knowledge of plaintiff's mark" without providing evidence of an intent to deceive or to benefit from

the plaintiff's reputation).

### f.       Strength of the Mark

"Under the Lanham Act strong marks enjoy the greatest protection against infringement."

Winship Green Nursing Ctr., 103 F.3d at 206 (finding service mark "robust" because it had been

registered and widely promoted for over thirty years).  Courts determine the strength of a mark by

focusing on its commercial and conceptual strength.  Boston Duck Tours, 531 F.3d at 16-17.

Several factors may be relevant to ascertaining the strength of a trademark, including "the length of

time the mark has been used, the trademark holder's renown in the industry, the potency of the mark

in the product field (as measured by the number of similar registered marks), and the trademark

holder's efforts to promote and protect the mark." Borinquen, 443 F.3d at 121.

Petco argues that UDDC's mark is conceptually and commercially weak.  Based on the

present record and given the Court's findings above, the Court agrees.   As discussed above,

UDDC's purported mark "Unleashed" alone is descriptive.   Although UDDC always uses

"Unleashed" with other descriptive terms such as "shop" "dog" "doggie" and/or "day care," it does

not claim a property right in these composite marks.

Petco's trademark search also revealed 132 other entities using the same "Unleashed" mark

in the names of their businesses.  See Little Decl., Ex. A.  Where there are numerous entities using

the purported mark or similar marks, Courts find the mark to be weak.  See, e.g.,  See CareFirst of

Md., Inc. v. First Care, P.C., 434 F.3d 263, 270 (4th Cir. 2006) (holding CAREFIRST for a health

insurance company to be a weak mark - i.e. not conceptually strong - because of the frequent use of "care" and "first" in healthcare companies' marks); Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co., 22 F.3d 1527, 1533-34 (10th Cir. 1994) (finding that "Universal" was a relatively weak mark since it is used by a significant number of entities in financial services).

While a mark may overcome this weakness by showing it has acquired secondary meaning, as discussed above, UDDC has not shown its mark has acquired such strength.  UDDC presents no evidence to demonstrate that it has promoted the mark "Unleashed" to have extensive consumer recognition (beyond its existing customers), particularly in Beverly or Essex County, to show its mark is commercially strong.  See Boston Duck Tours, 531 F.3d at 16 n. 14 ("Commercial strength' denotes the mark's consumer recognition value in the marketplace") (citation omitted).  Blumgart testified that the growth in its business is largely based on word-of-mouth recommendations and referrals.  Blumgart Dep. I, 164:15-18.  Accordingly, the Court finds that no reasonably jury could conclude the mark "Unleashed" has acquired the requisite commercial strength.

In sum, the balance of the eight Pignon factors weighs in Petco's favor showing that there is no likelihood of consumer confusion in Petco's use of "Unleashed."  Accordingly, considering the present record, no reasonable jury could conclude that UDDC has demonstrated that its purported mark "Unleashed" is distinctive or that confusion is likely to result from Petco's use of that mark under the Pignon analysis to support a finding that Petco violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Petco is therefore entitled to summary judgment as to Count I.

### B.   Count II:  Violation of Mass. Gen. L. c. 93A

"Chapter 93A punishes 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'"  Lechoslaw v. Bank of Am., N.A., 618 F.3d

49, 58 (1st Cir. 2010) (quoting Mass. Gen. L. c. 93A, § 2(a)).  Massachusetts courts have considered acts "unfair or deceptive" to be "immoral, unethical, oppressive, or unscrupulous."  <u>Black Dog Tavern Co., Inc. v. Hall</u>, 823 F. Supp. 48, 60 (D. Mass. 1993) (citation omitted).  "A ruling that conduct violates G.L. c. 93A is a legal, not a factual, determination."  <u>R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.</u>, 435 Mass. 66, 73 (2001).

UDDC's Mass. Gen. L. c. 93A claim is based on the same allegations as those under the Lanham Act, 15 U.S.C. § 1125(a), namely that Petco has engaged in unfair methods of competition and unfair or deceptive trade practices by using the word "Unleashed" in the name of its "Unleashed by Petco" stores and that its use is likely to cause consumer confusion.  (Am. Compl. ¶¶ 25-26).  However, as explained above, UDDC has failed to show that the purported mark "Unleashed" is entitled to trademark protection and that Petco infringed on that protected mark.  Thus, it cannot be said that Petco has engaged in any actionable conduct under Mass. Gen. L. c. 93A based on those same allegations.  <u>See e.g.</u>, <u>Pump, Inc. v. Collins Mgmt., Inc.</u>, 746 F. Supp. 1159, 1173 (D. Mass. 1990) (granting summary judgment of 93A claim where the Court found that defendant's band was within its rights to use the name "Pump" for a song); <u>Bayshore Grp. Ltd. v. Bay Shore Seafood Brokers, Inc.</u>, 762 F. Supp. 404, 415 (D. Mass. 1991) (finding no likelihood of success on the merits of plaintiff's c. 93A claim in light of the court's conclusion that there was no likelihood of confusion among the potential customers of the parties).  Summary judgment is therefore granted in Petco's favor as to Count II.

## VI.     Conclusion

For the foregoing reasons, Petco's motion for summary judgment is GRANTED.

**So ordered.**

29

/s/ Denise J. Casper
United States District Judge